**Appeal of THE FARMERS GRAIN CO.**     Docket No. 652.

1. Taxpayer may deduct from gross income an allowance for exhaustion, wear and tear of its property used in its business, based on the cost to it of such properties when acquired subsequent to March 1, 1913, and measured by the useful life of such properties.

2. In the absence of any evidence tending to show the existence of a good will or the value thereof, an arbitrary allocation of a portion of the purchase price of property of a going concern to such good will should be disallowed.

3. Taxpayer may not take as a deduction for exhaustion, wear and tear and obsolescence, a speculative amount alleged to represent a loss in market value of its properties due to competition.

Submitted January 13, 1925; decided February 25, 1925.

*John F. McCarron, Esq.*, for the taxpayer.

*A. H. Fast, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This is an appeal from a determination by the Commissioner of a deficiency in income and profits taxes against The Farmers Grain Co., for the calendar year 1918, in the sum of $2,759.09. The entire amount of the deficiency is not in controversy, but only so much thereof as arises from the adjustment made by the Commissioner in taxpayer's deduction for depreciation for the year involved. The appeal was submitted and argued on the pleadings and a stipulation of facts.

### FINDINGS OF FACT.

1. The Farmers Grain Co. is an Illinois corporation with its principal offices at Farmersville, Illinois. It was incorporated October 1, 1917, with an authorized capital stock of $30,000, all of which was issued for cash. Of that amount $25,000 was expended in the acquisition of a going grain elevator plant, including good will, if any.

2. The taxpayer purchased its plant and equipment, as set out above, on October 1, 1917. According to its balance sheet at that date the corporation set up on its books the assets so purchased as follows:

| | |
|---|---:|
| Buildings | $19,000 |
| Land | 1,000 |
| Furniture and fixtures | 2,000 |
| Machinery | 3,000 |
| **Total** | $25,000 |

The evidence establishes the useful life of the above listed assets to be as follows:

Buildings _____ 20 years
Machinery _____ 10 years
Furniture and fixtures _____ 10 years

3. At the time of the purchase of its plant the taxpayer's plant was the only grain elevator in the community and was without competition in its line of business. During the year 1918 another grain elevator was built in the community by a competitor, which had the effect of decreasing the value of the taxpayer's plant. In filing its return of taxable income for the calendar year 1918, the taxpayer deducted from gross income, as for depreciation, an amount of $8,000. This deduction was claimed as a result of the alleged decrease in the value of its property due to the erection of the competitive grain elevator above referred to. In support of its contention the taxpayer submitted to the Commissioner various affidavits tending to show the value of its property as of *December 31, 1918*, the date at which it sought to establish the decreased valuation of its properties contended for as above set out.

4. The Commissioner declined to allow the deduction of $8,000 so claimed by the taxpayer and made a segregation of values as of the date of their acquisition of the various items constituting taxpayer's property and allocated such values as follows:

Buildings _____ $8,000
Land _____ 1,000
Furniture and fixtures _____ 2,000
Machinery _____ 2,000
Good will _____ 12,000
                                                     _____
    Total _____ 25,000

The Commissioner thereupon computed depreciation on the valuation so allocated by him to buildings, machinery, and furniture and fixtures.

5. No evidence was offered by either party tending to show that the alleged good will had a value or that it had an existence in fact. We find, therefore, that the good will, if any existed, was of nominal or negligible value. The parties are in accord as to the value of the land, and we find its value at the date of acquisition to have been $1,000. For the same reason we find the value of furniture and fixtures at date of acquisition to have been $2,000. We find that the values allocated to its properties by the taxpayer, as shown by its balance sheet at October 1, 1917, the date of acquisition of the properties in question, represent the cost to it of such properties.

6. The Commissioner mailed to the taxpayer a statutory deficiency letter on September 17, 1924. The taxpayer appealed therefrom to this Board. Petition was filed November 14, 1924.

DECISION.

The tax should be computed in accordance with the following opinion. Final decision of the Board will be settled on consent or on fifteen days' notice, in accordance with Rule 50.

## OPINION.

KORNER: The evidence in this case clearly shows that on October 1, 1917, taxpayer purchased all of the assets of a going concern for $25,000. It immediately set up on its books the tangible assets and ascribed to them a value equal to the entire amount of the purchase price. It did not set up any amount as good will, and no evidence was submitted tending to show that either the vendor or the vendee considered that the good will, if any existed, had a value. The Commissioner has ascribed to the tangible assets a value as of October 1, 1917, in an amount equal to their alleged value on December 31, 1918, to wit, $13,000, and has ascribed the remainder of the purchase price, $12,000, to the purchase of good will, and in computing the tax herein has treated such sum as having been paid for such good will. This value so placed on good will and the allocation of $12,000 to its purchase, by the Commissioner, appears to be entirely arbitrary and unsupported by the established facts. There is no evidence that any good will was purchased, or that, if there was good will, it had any value. Furthermore, there is no evidence that the tangible assets purchased by taxpayer were not at the date of acquisition worth the full amount paid for them and at which they were taken up on taxpayer's books. We are of opinion, therefore, that the Commissioner was in error in allocating $12,000 of the purchase price of the property in question to the purchase of good will, and that the taxpayer is entitled to treat the whole of the purchase price of $25,000 as for the purchase of tangible property—as, in fact, it has done.

For the year 1918 taxpayer deducted $8,000 from gross income on account of depreciation. We have found that the total tangible assets were of the value of $25,000, of which $1,000 is ascribed to land, thus leaving $24,000 as the value of the depreciable assets. It is this value which should be taken as the basis for the computation of depreciation. In view of the taxpayer's own showing as to the life of the depreciable assets, the amount of $8,000 claimed as depreciation by the taxpayer is clearly excessive. The Revenue Act of 1918 provides, in part, as follows:

Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * *
(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.

The deduction for exhaustion, wear and tear of property allowed to a taxpayer under the provisions of the law just quoted, in the case of property acquired subsequent to March 1, 1913, is computed on the basis of the cost to the taxpayer of such property used in the trade or business. The depreciation claimed by taxpayer is not alleged to be due to any of the causes named but is claimed on the ground that another company during the year 1918 engaged in a similar business in the same community and thereby decreased the market value of taxpayer's assets. There is no claim or showing made that there was any extraordinary depreciation in the year 1918 due to wear and tear or exhaustion, nor is it claimed that the depreciable assets or any part thereof became obsolete in that year. It may be true that the market value of taxpayer's property was reduced by the advent of competition; however, that could be deter-

mined only by an actual sale of the property, in which case the gain or loss would be the difference between the cost, adjusted for depreciation to time of sale, and the selling price. It follows that the taxpayer may not deduct from gross income an alleged loss due to shrinkage in the market value of its property, no actual loss having been realized.

Taxpayer contends that its buildings had an estimated useful life of twenty years and its other depreciable assets an estimated useful life of ten years. Accepting the taxpayer's figures as to the cost of its assets and their estimated useful life, the maximum amount of depreciation which may be allowed in any year would be:

| | |
|---|---:|
| Buildings, 5 per cent of $19,000 | $950 |
| Furniture and fixtures, 10 per cent of $2,000 | 200 |
| Machinery, 10 per cent of $3,000 | 300 |
| Total | 1,450 |

It is the opinion of the Board that the taxpayer should be allowed a deduction in the year 1918 for exhaustion, wear and tear of property used in its business, in the amount of $1,450, based upon a value of $24,000 on its depreciable assets (buildings, furniture, fixtures, and machinery) as shown in its balance sheet of October 1, 1917.