Herbert E. Bradley and Mary Hastings Bradley v. Commissioner.
Bradley v. Commissioner
Docket No. 17499.
United States Tax Court
1949 Tax Ct. Memo LEXIS 185; 8 T.C.M. (CCH) 500; T.C.M. (RIA) 49121; May 17, 1949
*185 Herbert E. Bradley, Esq., for the petitioners. R. L. Greene, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: By this proceeding petitioners challenge respondent's determination of deficiencies in income tax as follows: Year
Deficiency
1943
$2,615.82
1944
2,691.79 Respondent's claim for increased deficiencies in the amounts of $208.38 and $154 for the same years is also in issue. The year 1942 is pertinent by reason of the Current Tax Payment Act. The above deficiencies resulted in part from respondent's action in reducing deductions for depreciation on apartment and farm buildings. Other adjustments are not contested. Findings of Fact Petitioners, husband and wife, filed joint Federal income tax returns for the years 1942, 1943, and 1944 with the collector of internal revenue for the first district of Illinois. Petitioner Herbert E. Bradley, hereinafter called petitioner, is a practicing lawyer, with principal office at 30 North La Salle Street, Chicago, Illinois. During the taxable years he owned and operated three apartment buildings in Chicago, hereinafter called Hyde Park, 64th Place, and Evans *186 Avenue, which he had constructed at the following ultimate costs (not including land cost): Year
Building
Completed
Cost
Evans Avenue
1910
$ 16,500
64th Place
1911
28,850
Hyde Park
1912
90,400
Total
$135,750 The above costs are the same as the fair market value of the properties as of March 1, 1913, except that in 1934 an addition to Hyde Park cost $6,000. Evans Avenue contained eight apartments of six rooms each; 64th Place contained nine apartments of three rooms each, and three apartments of five rooms each; and Hyde Park contained a total of twelve apartments, six with six rooms, four with eight rooms; and two with nine rooms. The rent received by petitioner from the three buildings varied throughout the years. Rent on apartments in Hyde Park was at its peak in the year 1923, 1924, and 1925, when petitioner received aggregate rents of $23,749.50, $18,221.40, and $17,236.85 respectively. The section of Chicago in which Hyde Park was constructed has, since that time, become a lower rent section. During the years 1937, 1938, and 1939 aggregate rents on apartments in Hyde Park were as low as $900 per month. In the year 1925 petitioner received *187 rents of about $9,914.13 on 64th Place, and $3,900 on Evans Avenue. Since that time the sections of Chicago in which those buildings are situated have become lower rent sections. During the years 1942, 1943, and 1944 petitioner continued operating the three apartment buildings, which were subject to rent control. Except for a few vacancies over short periods of time, the apartments were fully rented. The rents received by petitioner in those years were as follows: 1942
1943
1944
Hyde Park
$10,260.00
$10,481.00
$10,740.00
64th Place
5,731.00
5,634.75
5,773.50
Evans Avenue
2,796.00
2,796.00
2,796.00 Petitioner's expenditures for repairs and decoration in the same years were as follows: Repairs
Decoration
Building
1942
1943
1944
1942
1943
1944
Hyde Park
$1,128.43
$ 905.13
$ 563.47
$1,075.15
$1,794.88
$921.71
64th Place
337.63
339.33
281.87
251.55
339.39
497.75
Evans Avenue
723.76
263.57
470.24
190.28
228.65
475.04
Totals
$2,189.82
$1,508.03
$1,315.48
In his returns for the years 1942, 1943, and 1944 petitioner reported his apartment real estate operations as follows: Other
Year
Rent
Depreciation
Repairs
Expenses
Net Loss
1942
$18,787.00
$6,383.75
$2,434.82
$14,736.26
$4,767.83
1943
18,912.59
6,383.75
1,738.03
14,943.11
4,152.30
1944
20,209.50
8,805.75
1,365.48
15,343.45
5,305.18
*188 In schedules attached to his returns petitioner listed the items which comprised "other expenses." Those items, in addition to "decoration," included electricity, insurance, garbage, taxes, coal, supplies, janitors, water, boiler inspection, interest, telephone, loan expenses, trucking, postage and stationery, lawns, incidentals, exterminator, and advertising. The three apartment buildings are of brick and stone construction, with back porches of wood. The interiors of the buildings are frame, ordinarily known as "mill" construction. During the years 1942, 1943, and 1944 the buildings were in a bad state of repair. Window screen frames were rotted and needed replacing. The buildings needed painting. Large sun parlors, with which the apartments were equipped, had become outmoded and made the apartments less desirable. Similarly, old-fashioned sideboards, wall panels, and fireplaces might have been removed or remodeled to modernize the buildings. Additional electric wall outlets would have made the apartments more convenient for use of modern electrical appliances. Stair carpets were badly worn. Many of the floors needed refinishing. The bathrooms were not tiled or painted in accordance *189 with more modern styles, and they contained old-fashioned fixtures. The total cost of modernizing the three buildings and of making all necessary repairs in 1942, 1943, and 1944 would have been $76,311.47, divided among the buildings as follows: Buildings
Estimated Cost
Hyde Park
$46,319.97
64th Place
18,293.00
Evans Avenue
11,698.50 Petitioner has not made any of the improvements or alterations described above because of lack of funds. Petitioner filed his first income tax return for the year 1920. In his return for each of the years 1920 to 1941, inclusive, he claimed and was allowed for each apartment building depreciation deductions on the straight-line method at the following annual rates: Year
Rate
1920-1934
3 percent
1935
2.5 percent
1936
3 percent
1937-1941
2.5 percent The total depreciation sustained (or allowed) as to each building prior to the taxable years, and the unrecovered costs as of December 31, 1941, were as follows: Unrecovered
Total Depreciation to
Cost as of
Building
Dec. 31, 1941
Dec. 31, 1941
Percentage
Amount
Hyde Park
83 percent
$71,132.60
$19,268.00
64th Place
85 1/2 percent
24,666.75
4,183.25
Evans Avenue
88 percent
14,520.00
1,980.00
*190 In his returns for the years 1942 and 1943 petitioner reported the aggregate "cost or other basis" of the three apartment buildings as $135,750, and claimed depreciation on them at the annual rate of 2.5 percent. He claimed an additional 2 percent deduction, in the amount of $2,715, for "amortization" with the explanation "Old equipment large apartments and run down because of rent control." In his return for the year 1944, petitioner reported the same "cost or other basis," and claimed depreciation on the three buildings at the annual rate of 3 percent, in the aggregate amount of $4,072.50. In addition, he claimed a deduction of 3 percent for "amortization" in the same amount. Petitioner mistakenly characterized the above deductions as "amortization," and he now claims them as "additional depreciation and obsolescence." No claim for obsolescence was made in returns for years prior to 1942. Respondent has disallowed all deductions for depreciation and obsolescence on the apartment buildings for the years 1942, 1943, and 1944, in excess of a 2.5 percent annual rate. Using the same basis as petitioner, $135,750, he has allowed a deduction of $3,393.75 for each year. Subsequent *191 to the taxable years petitioner continued to operate the three apartment buildings. During the year 1946 he sold 64th Place and Evans Avenue, and in his returns reported gains from those sales, including the land upon which the buildings stood, as follows: Expenses of
Depreciation
Gross Sales
Cost or
Sale and Im-
Since
Building
Price
Other Basis
provements
Acquisition
Gain
64th Place
$40,000.00
$40,590.31
$1,732.60
$21,276.87
$ 9,476.98
Evans Avenue
30,000.00
30,000.00
1,717.12
12,306.20
10,589.08 At the time of the hearing in this proceeding petitioner was still operating Hyde Park. In his return for the year 1947 he reported rental income in the amount of $11,600, repairs of $458, and "other expenses" of $8,313.18. In addition to the apartment buildings, during the taxable years petitioners owned farm buildings located in Wisconsin on a tract of land containing about two hundred acres. The farm buildings, all of frame construction, were built by petitioner over a period of years beginning in 1917 or 1918 and ending in about 1938. The buildings consist of a dwelling house which, with its additions, cost about $3,250; three *192 small buildings used for extra bedrooms, constructed for about $750 each; a studio workshop for petitioner's wife who is a writer, costing about $1,000; a servants' quarters, which cost about $2,000; a four-car garage with two workshops, at a cost of about $3,000; and two stable buildings equipped to shelter four horses, together costing about $2,200. During the years 1942, 1943, and 1944 petitioner rented 80 acres of the farm as pasture and about 5 acres for raising hay. The tenant paid for the use of those 85 acres by performing labor for petitioner. The balance of the farm was used by petitioner for his own purposes. The farm buildings were used by petitioner, his wife, their servants, and farm hands in the neighborhood who worked for petitioner. Each of the farm buildings had an anticipated useful life, when built, of 25 years. In his returns for the years 1942 and 1943 petitioner reported the aggregate "cost or other basis" of the farm buildings as $11,000, and claimed a deduction for depreciation at the annual rate of 2.5 percent, in the amount of $275. In his return for the year 1944, using the same "cost or other basis," he claimed a deduction for depreciation at 3 percent, *193 in the amount of $330, and in addition a deduction for "amortization" (now claimed as "additional depreciation and obsolescence") at the same rate and amount. No claim for obsolescence was made in returns for years prior to 1944. Petitioners' income for the years in question, according to their tax returns, was exclusively from compensation for personal services, rents, and dividends. In his notice of deficiency respondent disallowed $385 of the $660 depreciation deduction for the year 1944. In his answer respondent claims increased deficiencies based on disallowing all deductions for depreciation on the farm buildings for the years 1942, 1943, and 1944, since they "* * * were used by petitioners for personal purposes, and * * * petitioners were not entitled to deduct any depreciation under the provision of Section 23 (1) of the Internal Revenue Code." Opinion The function of depreciation deductions is "to replace the original investment in the property at the time of its retirement." Virginian Hotel Corp. of Lynchburg v. Helvering, 319 U.S. 523. The 2 1/2 percent depreciation deduction permitted by respondent is based on an anticipated useful *194 life for the respective properties of 40 years. It assumes that the usefulness of the buildings will terminate at or shortly after the end of the years 1949, 1950, and 1951. Due to presumably excessive depreciation allowed in some years, they would actually be compensated for by depreciation "allowed or allowable" in about the years 1946-1949. See Virginian Hotel Corp., supra. There seems now no dispute between the parties that 40 years was an appropriate estimate and that normally the 2 1/2 percent rate would have been adequate. Petitioners' contention can be summed up in a quotation from their brief: "That when it is shown conclusively that buildings are operating at a loss and that there is not sufficient income to meet depreciation and obsolescence nor pay any dividends on the investment then so far as the buildings are concerned they cease to be an asset and that fact can be taken into consideration by the court in allowed accelerated depreciation and obsolescence." There was no actual worthlessness or abandonment of the property, cf. Alice V. Gordon, 46 B.T.A. 1201, affirmed (C.C.A., 4th Cir.), 134 Fed. (2d) 685, nor is there evidence *195 that any such eventuality was likely. Assuming there were losses, the indications were that these would be temporary and petitioner so regarded them. [1] We cannot appropriately find that the properties had reached the end of their economic life or were in danger of doing so. Still less is there any basis in the record for the conclusion that the physical life of the buildings would be shorter than that originally anticipated. One or the other is necessary to sustain a claim of accelerated depreciation, see Wier Long Leaf Lumber Co., 9 T.C. 990, reversed other issues (C.A., 5th Cir.), 173 Fed. (2d) 549 (March 17, 1949), or obsolescence. "* * * To permit the allowance, therefore, while the property is being continuously used for its original purpose, and while no intention to discontinue its use appears, is to make an allowance for a condition the opposite of obsolescence." Detroit & Windsor Ferry Co. v. Woodworth (C.C.A., 6th Cir.), 115 Fed. (2d) 795, 797, certiorari denied, 312 U.S. 692. A mere temporary loss of income will not do. *196 "* * * It thus becomes apparent that while the rental value of the property fluctuated, its life is in no wise diminished, and to grant taxpayer the relief it here seeks would be the equivalent of aiding it to recoup fluctuation losses. Manifestly, the life of the property has many years to run, and it can be used throughout its normal life. The unprofitable nature of a business or the mere shrinkage in value of commodities is not a sufficient basis upon which to predicate an allowance for obsolescence." * * * [Southeastern Building Corp. v. Commissioner (C.C.A., 5th Cir.), 148 Fed. (2d) 879, 880, affirming 3 T.C. 381, certiorari denied, 326 U.S. 740]. And, of course, a decrease in value, even if that had been shown, is no justification for such a deduction as that now claimed. Olean Times-Herald Corp., 37 B.T.A. 922; The Farmers Grain Co., 1 B.T.A. 605. But even if petitioner's theory were legally supportable, the record fails to furnish the factual basis for it. The evidence shows that throughout the period under consideration, the properties were useful and used for the purpose for which they were originally *197 intended. They were earning a substantial amount of gross income and to a large extent at least the depreciation deductions permitted by respondent offset income from the property and correspondingly reduced petitioners' tax. That is the situation as it existed at the end of the taxable years in issue. Wier Long Leaf Lumber Co., supra.Looking beyond those years, in order to test the accuracy of the estimate of useful life, cf. James Couzens, 11 B.T.A. 1040, 1165, we find that, at the time of the hearing in 1948, one of the properties remained in the same situation and the two others had been sold for substantial amounts. For all that the record shows, the properties could be expected to complete their original anticipated useful life and the depreciation deductions to have served their purpose. We find no warrant for concluding that these deductions as computed by respondent are inadequate to return to petitioner his basis within the purpose of section 23 (1). The second issue relates to depreciation claimed on farm buildings which respondent now proposes to disallow in full. As to all but one of these buildings, this determination must also be sustained *198 in view of the use which the evidence shows was exclusively personal. Depreciation on such property is not an allowable deduction. Estate of Johnson N. Camden, 47 B.T.A. 926, affirmed (C.C.A., 6th Cir.), 139 Fed. (2d) 697. Respondent had the burden of proof as to the increased deficiency, Terminal Railroad Association of St. Louis, 33 B.T.A. 906, affirmed (C.C.A., 8th Cir.), 89 Fed. (2d) 739, but in this respect we think it has been sustained. The one exception relates to the "studio," which it is claimed petitioner Mary Hastings Bradley used in her profession as a writer. With respect to this single property, neither party has sustained the burden of proof incumbent upon him. Cf. Nathan Cohen, 7 T.C. 1002. Petitioners have not proved that it was used in their trade or business, section 23 (1), supra, but respondent has not proved the contrary. As to this single item, the deficiency is sustained but the claim for increased deficiency disapproved. Decision will be entered under Rule 50. Footnotes
1. Petitioner testified: "* * * I had petitions before the rent control board showing these very figures that I present here, showing the buildings were at a loss, and asking them for additional rents with which to meet my expenses; and I hoped every year that they would be granted. They were not granted for seven years. * * *"↩