EXCHANGE STATE BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7742.   Promulgated March 31, 1947.

*Harry E. Judd, Esq.*, for the petitioner.
*Richard A. Jennings, Esq.*, for the respondent.

OPINION.

LeMire, *Judge*: This proceeding involves income tax deficiencies for the years 1941, 1942, and 1943 in the respective amounts of $375.91, $974.21, and $135.21. The only question in issue is whether the petitioner, a state bank, is entitled to deduct losses resulting from the operation of a depositors' trust fund. The respondent disallowed the deductions on the ground that the cost basis of the segregated assets had been exhausted by loss deductions claimed and allowed in the petitioner's returns for prior years. The petitioner contends that the cost basis of such assets should be reduced only by so much of the losses of prior years as resulted in tax benefits in those years.

The proceeding has been submitted on a written stipulation of facts, which reads in material part as follows:

1. The petitioner is a state bank, organized under the laws of Iowa, and was incorporated September 23, 1918. It was in full regular operation until January 28, 1933, when it was placed under state supervision and operated in a limited way under State Law SF 111 during the bank holiday, and until January 28, 1934 when it was permitted to reopen for full regular business operations.

2. On or about January 27, 1934 assets of the petitioner having a cost basis of $140,795.94 were segregated and placed in a Depositors Trust Fund in consideration of which the depositors waived claims against petitioner to the extent of $90,669.09. This transaction left an unrecovered cost basis of the assets in the amount of $50,126.85.

3. Pursuant to an agreement entered into with respondent (hereinafter referred to in paragraphs 17 and 18), petitioner was entitled to deduct net losses to the extent of the unrecovered cost basis of the segregated assets referred to in paragraph 2 above.

4. The Depositors' Trust Fund was closed on or about April 24, 1943 at which time the final dividend was paid to the depositors by the receiver. Hence petitioner is concluded from claiming further deductions beyond the loss claimed for 1943.

5. Petitioner filed its income tax returns for the calendar years 1935 to 1943, inclusive, with the Collector of Internal Revenue for the District of Iowa. The returns were filed on the cash basis.

6. Petitioner claimed no deduction on its income tax return for 1934 for any losses suffered in the administration of the Depositors' Trust Fund.

7. Petitioner's income tax return for the calendar year 1935, without any deduction for the loss suffered in the administration of the Depositors' Trust Fund, showed net taxable income of $724.48 with a resulting tax liability of $99.62 which was duly paid. On or about June 12, 1937, taxpayer filed a claim for refund of the $99.62 taxes paid, based on the grounds that the actual net loss in the Depositors' Trust Fund for 1935 was $11,704.22. The refund was allowed.

8. For the calendar year 1936, petitioner's income tax return showed a net income of $1,902.47, before deducting the loss of $7,015.25 suffered in the administration of the Depositors' Trust Fund, which resulted in the income tax return for that year showing a net loss of $5,112.78.

9. For the calendar year 1937, petitioner's income tax return, without deduction for the loss suffered in the administration of the Depositors' Trust Fund, showed a net income of $755.37. After deducting the Trust Fund loss of $11,097.18 the return disclosed a net loss of $10,341.81. The $11,097.18 loss figure shown on the return is in error. The correct figure should be $10,997.18 inasmuch as a $100.00 error in addition was made on the schedule attached to the return.

10. For the calendar year 1938, the original income tax return filed by petitioner showed taxable income of $2,741.69 with tax liability of $452.38 which was duly paid. On or about August 2, 1941, a claim for refund of the $452.38 taxes paid was filed (together with an amended return), based upon the fact that the loss in the Depositors' Trust Fund amounted to $4,888.35. The refund was allowed.

11. For the calendar year 1939, petitioner claimed a deduction in its income tax return for a loss in the Depositors' Trust Fund in the amount of $4,428.95, which resulted in a net loss of $168.19 on the income tax return.

12. For the calendar year 1940, petitioner claimed a deduction in its income tax return for a loss in the Depositors' Trust Fund in the amount of $11,309.22, which resulted in the income tax return showing a net loss of $7,280.16. Respondent allowed an adjusted net operating loss of $4,655.91 to be carried forward to 1941.

13. For the calendar year 1941, petitioner claimed a deduction in its income tax return for a loss in the Depositors' Trust Fund in the amount of $5,463.24, together with a portion ($891.68) of the net loss shown on the 1940 income tax return sufficient to show no taxable income for the year 1941. Respondent disallowed the deduction of the $5,463.24 loss in the Depositors' Trust Fund but allowed the entire net loss carry-over from the year 1940 in the amount of $4,655.91.

14. For the calendar year 1942, taxpayer claimed a deduction in its income tax return for a loss in the Depositors' Trust Fund in the amount of $7,329.03, which resulted in the income tax return for that year showing a net loss, on line 31 thereof, of $3,067.53 with no tax liability. Respondent disallowed the deduction of $7,329.03 and increased the net income on line 31 to $4,261.50.

15. Petitioner in its income tax return for the calendar year 1943 claimed no deduction for loss in that year in the administration of the Depositors' Trust Fund as no definite information had at that time been furnished by the Receiver. A net loss carry-over from the calendar year 1942 in the amount of $500.75 was claimed. This deduction was disallowed by respondent. Upon closing of the Trust Fund in 1943, the Receiver determined the final loss during the receivership, which for the year 1943 amounted to a net loss in the Depositors' Trust Fund of $2,391.16 for which petitioner claims allowance in this proceeding. Respondent denies that the loss is deductible.

\* \* \* \* \* \* \*

22. The statute of limitations has run on the assessment of any additional tax or the claiming of any refund for each of the calendar years 1935 to 1940, inclusive.

Through a series of letters exchanged between the Commissioner and the petitioner during 1944 and 1945, an agreement was reached embodying in substance the following points:

1. All years then barred by the statute of limitations were to remain "closed" for income tax purposes.

2. For all "open" and future years the depositors' trust fund and the bank were to be treated as a single tax entity.

3. The amount of the claims waived by the depositors, $90,669.09, was to be applied to reduce the cost basis of the segregated assets, leaving an unrecovered cost of $50,126.85.

4. The losses sustained in open and future years on sales of segregated assets, note settlements, and worthless notes charged off, were to be allowed to the extent of the still unrecovered cost basis of the segregated assets.

The Commissioner's letter to the petitioner dated January 17, 1945, reads in part as follows:

Reference is made to your letter dated December 12, 1944, relative to the treatment, for federal income tax purposes, of assets placed in trust by you for the benefit of your depositors under a reorganization effected in accordance with state banking laws.

Your letter, which is signed by your president and the trustee of the trust assets and approved by the superintendent of banking for the State of Iowa, establishes your election to use the one-entity method offered by the Bureau (which method contemplates the treatment of the bank and trust as a single entity), and the terms and conditions stated therein are acceptable to this office.

In accordance with your election it is agreed that you will be regarded as having agreed, in return for a waiver of $90,669.09 of depositors' claims, to liquidate your own segregated assets in an orderly fashion and pay over to the depositors the proceeds and the net income therefrom, up to the amount of waived depositors' claims; that there will be regarded as having been immediately recovered, at the time your assets were segregated, that part of the cost basis therefor which equals the amount of claims waived by depositors; that losses taken by you on each individual sale of a segregated asset [also losses on note settlements and worthless notes charged off] will be allowed in open and future years, but only to the extent of the still unrecovered cost basis of the segregated assets; that there will be no income from cancellation of indebtedness at the end of the liquidation period; that no tax is to be assessed during the liquidation period upon the income attributable to the segregated assets; that, if there remains an excess of segregated assets after full payment to the depositors, which excess is returned to you, then taxes shall be computed on the income attributable to the segregated assets for the liquidation period as if such income had been received by you during the liquidation years and such taxes shall be collected from you, only, however, to the extent that the excess of the segregated assets returned to you is sufficient to pay such taxes; and that if there still remains an excess of segregated assets after such taxes have been paid as indicated, then the remaining excess will constitute capital which belongs to you and upon which any taxes due have been previously paid and which is not subject to another tax in the year of trust termination.

The petitioner's contention in this proceeding is that the losses re-resulting from the operation of the depositors' trust fund should be applied to reduce the cost basis of the assets held therein only to the extent that the deductions for such losses taken in its returns or allowed in claims for refund resulted in tax benefits. In support of this contention the petitioner refers to section 29.22 (b) (12)–1 of Regulations 111 and cites *Estate of James N. Collins*, 46 B. T. A. 765; affd., 320 U. S. 489; and *John V. Dobson*, 46 B. T. A. 770; affd., 320 U. S. 489.

The cited cases dealt with inclusions in gross income of recoveries on bad debts or securities previously charged off as worthless, or partially worthless; they did not involve any question of loss deductions as such. Likewise, section 29.22 (b) (12)–1 of Regulations 111, promulgated under section 22 (b) (12), Internal Revenue Code (added by section 116 (a) of the Revenue Act of 1942), deals only with inclusions, or, more properly speaking, exclusions from gross income of recoveries of "bad debts, prior taxes, and delinquency amounts." Such recoveries are excluded from gross income to the extent that deductions or credits in respect of such bad debts, prior taxes, or delinquency amounts, taken in the taxpayers' returns for prior years, did not result in a reduction of taxes.

It has been held in a number of cases that the tax benefit theory has no application to claimed loss deductions of current taxable years, such as are involved in the instant case. See *National Bronx Bank v. Commissioner*, 147 Fed. (2d) 651 (C. C. A., 2d Cir.) ; *Bank of New-*

*berry*, 1 T. C. 374; *First National Bank, Philipsburg*, 43 B. T. A. 456, and cases therein cited.

The petitioner argues that the above described agreement which it had with the Commissioner relative to the treatment of the segregated assets specifically authorized the deduction now claimed. It refers especially to the above quoted provision of the agreement that the losses of the depositors' trust fund "will be allowed in open and future years, but only to the extent of the still unrecovered cost basis of the segregated assets." We do not think that it was the intention of the Commissioner, or that it is the effect of this provision of his agreement with the petitioner, to broaden the statutory provisions for the allowance of loss deductions, or to establish any new rule for the application of those statutory provisions in dealing with this particular depositors' trust fund. Normally, taxpayers are permitted to deduct their realized losses on capital assets to the extent, and only to the extent, of the cost basis of such assets. The "unrecovered cost basis" means no more than that portion of the cost basis which has not already been recovered through the return of capital, or through losses, or depreciation deductions allowed or properly allowable (*Virginian Hotel Corporation of Lynchburg* v. *Helvering*, 319 U. S. 523) in prior years. As to the segregated assets here, the "unrecovered cost basis" was exhausted by the end of 1940, when the deductible losses of the depositors' trust fund for that year and the prior years which had been claimed and allowed in the petitioner's returns or in claims for refund exceeded the amount agreed upon as the remaining cost basis of the assets at the time of their segregation.

The petitioner argues, further, that the disallowance of the deductions here sought is contrary to the "intent and language" of section 3798, Internal Revenue Code. The general purpose of that section is to exempt from tax the income of certain types of insolvent banks or the income from segregated assets of such banks which is to be held for the benefit of the depositors. It has no application to the question here under consideration. The petitioner is not claiming any exemption from tax. It seeks to deduct, from its admittedly nonexempt income, losses sustained in the operation of the tax-exempt segregated assets.

The parties disagree in their briefs as to the meaning of a portion of their stipulation of facts. The respondent requests the finding that the petitioner's income tax return for 1935 discloses a depositors' trust fund loss of $11,704.22, a net income, without the benefit of such losses, of $724.48, and a final net loss of $10,979.14. The petitioner objects to this finding as contrary to the stipulated facts set forth in paragraph 7 of the stipulation. The stipulation of facts, which is set out in part above, is that the return for 1935 showed a

net income of $724.48 and a tax liability of $99.62 without the deduction of any loss suffered in the depositors' trust fund; that in 1937 the petitioner filed a claim for refund of tax for 1935 based on the grounds that the actual net loss in the depositors' trust fund for 1935 was $11,704.22; and that "the refund was allowed." We conclude from these facts that the Commissioner allowed the deduction of the $11,704.22 loss. It is not shown in the stipulation whether the petitioner filed an amended return for 1935, as it did for 1938 (see stipulation, paragraph 10), showing the deduction of the $11,704.22 loss, but if that fact is at all material to the issue raised in this proceeding, its absence from the evidence does not aid the petitioner. The petitioner, and not the Commissioner, has the burden of proof in this proceeding. The respondent's determination for the taxable years involved, that "the basis of segregated assets has been fully recovered in years prior to 1941" is prima facie correct, and the petitioner can not overcome this presumptive correctness merely by demonstrating that the facts which it has stipulated, and upon which it must rely, fail to show clearly all of the facts necessary to support that determination.

*Decision will be entered for the respondent.*