Blackhawk-Perry Corporation v. Commissioner.
Blackhawk-Perry Corp. v. Commissioner
Docket Nos. 10352, 13317.
United States Tax Court
1948 Tax Ct. Memo LEXIS 34; 7 T.C.M. (CCH) 873; T.C.M. (RIA) 48245; November 19, 1948
Carl H. Lambach, Esq., for the petitioner. *35 Frank H. Kavanaugh, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: These cases involve deficiencies asserted as follows: Declared
Value
Excess
Docket
Income
Profits
No.
Year
Tax
Tax
10352
1942
$5,772.72
$2,855.17
1943
9,072.49
2,558.43
13317
1944
7,702.40
1,336.05
Two questions are before us: (1) Did the Commissioner err in his determination that petitioner claimed excessive depreciation on its hotel properties for the period 1942 through 1944? (2) Did the Commissioner err in disallowing a deduction claimed by petitioner as a net operating loss carry-over from 1941 to the years 1942 and 1943? Findings of Fact The facts herein were all stipulated and are adopted as stipulated. Petitioner is a corporation organized under the laws of Delaware and doing business in the State of Iowa. It was incorporated for the purpose of taking title to properties known as the Blackhawk Hotel and the Perry Apartments, both located in Davenport, Iowa, together with the contents thereof consisting of furnishings and equipment theretofore mortgaged by deed of trust by Blackhawk *36 Hotels Company to secure an outstanding bond issue of $1,497,500. At the time there were pending proceedings under 77-B of the Bankruptcy Act and a plan of reorganization was approved by the court whereby title to the above-named Blackhawk Hotel and the above-named Perry Apartments, together with the contents as stated, were conveyed by the debtor Blackhawk Hotels Company to the petitioner Blackhawk-Perry Corporation, hereinafter referred to as petitioner. The property so conveyed comprised the major part of the security theretofore conveyed by the deed of trust. The property covered by the deed of trust, but not conveyed to the petitioner, consisted of several leasehold estates on hotel properties, together with their equipment. This property was transferred to the lessors thereof by reason of landlord's liens. Under the plan of reorganization each holder of outstanding bonds of Blackhawk Hotels Company was entitled to receive upon surrender of his bonds shares of the capital stock of petitioner at the rate of one share of stock for each $100 principal amount of bonds. Petitioner requested of the debtor corporation a statement of the net book value of the equipment and furnishings *37 of the various properties. The net book values so furnished were scaled to the actual amount of bonds theretofore issued and outstanding, to wit, $1,497,500. The basis to petitioner established by reference to the closing entries furnished by the comptroller of transferor, Blackhawk Hotels Company, for furnishings and equipment, was $215,672.67. Petitioner ascribed to said personal property a useful life of 15 years and so set forth on its return such a rate. From August 1, 1935, to and including December 31, 1944, the petitioner computed its depreciation as follows: August 1 to December 31, 1935
$ 5,999.91
1936
14,378.18
1937
14,378.18
1938
14,378.18
1939
14,378.18
1940
14,378.18
1941
14,378.18
1942
14,378.18
1943
14,378.18
1944
14,378.18
Total depreciation
$135,403.53 Respondent, in establishing the basis for depreciation, adjusted the basis of petitioner to the basis in the hands of the transferor, Blackhawk Hotels Company, and thus established the correct basis of $66,625.56 for said personal property. The basis upon which petitioner computed its depreciation was erroneous. After examination of petitioner's books and tax reports, deficiencies *38 were asserted by respondent in the amount of $8,627.89 for the year 1942, $11,630.92 for the year 1943, and $9,038.45 for the year 1944. Said deficiencies resulted in part for the years 1942 and 1943, and entirely for the year 1944, from adjustments made by respondent in the disallowance of depreciation on the personal property referred to above. As against the adjusted basis of $66,625.56 respondent charged the amount of depreciation deducted by petitioner in its return for the years following August 1935. As a consequence respondent disallowed further depreciation for the years 1942 to 1944, inclusive, the period involved herein with resultant increase in petitioner's tax liability. No tax benefit accrued in any year to petitioner and its returns were accepted as filed by respondent for the years barred by the statute of limitations. A second issue contained only in Docket No. 10352 involves a net operating loss carry-over deduction from the year 1941 arising out of a capital loss sustained in that year in connection with the sale of Perry Apartments property. The Perry Apartments, acquired in 1935, was an apartment building in the city of Davenport, Iowa, which petitioner owned *39 and leased on a percentage basis, in the carrying on of its business of owning, holding, and renting real estate. In 1941 petitioner sold said building and land on which it was situated and sustained a capital loss of $58,643.33 on the sale of the land alone. Petitioner, however, in making its return for the year 1941, erroneously determined the loss on said land to have been only $37,570.29, and used such amount in computing a net operating loss of $55,667.19, part of which it carried over and deducted in its 1942 return, and the balance in its 1943 return. The petitioner had no net capital gains in 1941 which it could use to reduce its loss from the sale of said lot. Opinion Petitioner contends that "the excess of depreciation as computed on petitioner's returns for the years 1935 to 1940, inclusive, should have been adjusted to correspond with the facts incident to the process of adjusting petitioner's base for depreciation, and petitioner's base should have been established by reducing the same to the extent only of its depreciation computed upon the adjusted base at the agreed rate." This is the argument in legal substance presented to the Court by the taxpayer in Virginian Hotel Corporation v. Helvering, 319 U.S. 523. *40 The petitioner, however, seeks to distinguish the case at bar from the Virginian Hotel case with the following comment: "In the first place the taxpayer in the Virginian Hotel case admittedly was possessed of assets, the subject of depreciation; and in the second place the taxpayer in said case was contending for a retrospective adjustment of the rate." The petitioner then argues that since the unexhausted cost as of August 1, 1935, in the amount of $66,625.56 had been absorbed by depreciation deductions prior to the taxable years, therefore the petitioner in the taxable years no longer possessed those same assets as "the subject of depreciation." As to the distinction between an excessive depreciation deduction resulting from an erroneously increased cost base and one resulting from an erroneously increased rate, petitioner contends that the former is a matter of mathematical miscalculation and whatever mistake occurs is easy of detection by the Commissioner, whereas in the latter case the Commissioner is considerably at the mercy of the statement of the taxpayer pertaining to the useful life of the depreciated article and the consequent rate of depreciation. We are unable *41 to discover any merit in either of these attempted distinctions. During the taxable year the taxpayer did possess the assets involved and whether their cost had been prematurely exhausted by a mistake in the cost base or in the estimated rate of exhaustion, wear and tear and obsolescence would make no apparent legal difference. In fact, from the viewpoint of the taxpayer it would seem that the one who made the mistake in computing the cost base of his own property would have less merit to his claim for adjusting past deductions than would one who merely made a mistake in looking into the future and failing properly to estimate the useful life of property which in the nature of things could be little more than a guess. The remainder of petitioner's argument parallels those of the taxpayer in the Virginian Hotel case. This case has now been so universally followed that further discussion of these issues would be futile. We therefore find that the refusal of the Commissioner to allow further depreciation deductions in the taxable year was correctly based in law. Second Issue In 1941 petitioner sustained a loss from the sale of the Perry Apartments. In that year section 117 (a) (1), I.R.C. *42 [1] was so worded that this loss was a capital loss. In 1941, therefore, petitioner's loss from the sale of this property could not become a part of petitioner's "net operating loss" as provided for in section 122 (b) (2), I.R.C., wherein provision was made for a loss carryover for the ensuing two years of net operating loss. In 1942, however, section 117 (a) (1) was amended by section 151 (a) of the Revenue Act of 1942. [2] Thereby the amended relevant portion of section 117 (a) (1), I.R.C.[3] provided that petitioner's loss, if it had occurred in that year, would have been an ordinary loss and includible in petitioner's "net operating loss" for the purposes of loss carry-over. *43 Petitioner contends that in computing a 1941 net operating loss carry-over deduction in 1942 and 1943, it should be computed in accordance with the law controlling operating losses during the years 1942 and 1943, whereas respondent contends that it should be computed in accordance with the law in effect during the year 1941. Petitioner relies upon the holding of this Court in Moore, Inc., 4 T.C. 404, aff'd., 151 Fed. (2d) 527. Respondent, in rejecting this loss deduction for the years 1942 and 1943, relies upon Reo Motors, Inc., 9 T.C. 314. In the Moore case section 122 (d) (4), as amended in the 1942 Act, permitted a computation of capital losses in 1942 differing from that permitted in 1941, whereby the taxpayer therein would have sustained a larger net operating loss in 1941 if the 1942 Act had been in force at that time. This Court held that the taxpayer was entitled to a loss carry-over to be computed according to the law controlling loss carry-overs in effect in 1942. In that case the Court had before it the interpretation of the law controlling loss carry-overs only and this Court was affirmed by C.C.A. 5 at 151 Fed. (2d) 527. *44 In the Reo Motors, Inc., case, supra, the Court had before it for consideration section 23 (g) as it existed in 1941 and 1942. Under section 23 (g), I.R.C., applicable to 1941, the loss sustained by the taxpayer therein was a capital loss, whereas by the amendment of section 23 (g), I.R.C., by the Act of 1942, that loss became an ordinary loss. In that case the Court had before it a section of the Code defining the nature of the loss involved rather than the law pertaining to the loss carry-over privilege itself, and it held that the character of the loss involved was determined by the provisions of the Code pertaining to that loss when it occurred and that the amount of loss carry-over was not increased by an amendment to the Code which would have increased that loss had it occurred in the ensuing year when the taxpayer was exercising his carry-over privilege. In the case at bar we have the identical question which was before the Court in Reo Motors, Inc., except that in the pending case an amendment to section 117, I.R.C., is before the Court which changed capital losses as they existed in 1941 to ordinary losses *45 under the provisions of the amendment to section 117, which amendment was made in 1942. While there is a distinction between the Moore case and the Reo Motors case, there is no distinction in legal principle between the Reo Motors case and the case at bar. The Reo Motors case is the last pronouncement of this Court on the issue involved in the case before us and the conclusion in the Reo Motors case that any loss which a taxpayer sustains in any taxable year is controlled by the provision of the Code existing in that year and that such loss cannot be carried over into an ensuing year at an amount greater than that allowed when sustained, is in our opinion correct even though the law pertaining to such loss is changed so that in the ensuing year the taxpayer would be entitled to claim a greater loss than he actually was allowed during the year in which the loss was sustained. It is therefore our conclusion that the loss carry-over claimed by petitioner from the year 1941 to the years 1942 and 1943 was correctly disallowed by the Commissioner. Decision will be entered for the respondent. Footnotes
1. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. - As used in this chapter - (1) Capital assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include * * *↩
2. SEC. 151. REAL PROPERTY; INVOLUNTARY CONVERSIONS, ETC. (a) Real Property Not Treated as Capital Asset. - Section 117 (a) (1)↩ (relating to the definition of "capital assets") is amended by inserting immediately before the semicolon at the end thereof a comma and the following: "or real property used in the trade or business of the taxpayer." 3. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. - As used in this chapter - (1) Capital assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include * * * real property used in the trade or business of the taxpayer * * *.↩