## VIRGINIAN HOTEL CORPORATION *v.* HELVERING, COMMISSIONER OF INTERNAL REVENUE.

No. 766.   Argued May 12, 13, 1942.—Decided June 7, 1943.

*Mr. W. A. Sutherland,* with whom *Messrs. F. G. Davidson, Jr., Noah A. Stancliffe, Theodore L. Harrison,* and *J. Donald Rawlings* were on the brief, for petitioner.

*Mr. Samuel H. Levy,* with whom *Solicitor General Fahy, Assistant Attorney General Samuel O. Clark, Jr.,* and

*Messrs. Sewall Key, L. W. Post,* and *Valentine Brookes* were on the brief, for respondent.

*Messrs. I. Newton Brozan* and *Aaron Holman* filed a brief on behalf of the Pittsburgh Brewing Company, as *amicus curiae,* urging reversal.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The facts of this case are stipulated. Petitioner operates an hotel. From 1927 through 1937 petitioner (or its predecessor) reported in its income tax returns depreciation on certain of its assets on a straight-line basis.[1] No objection was taken by the Commissioner or his agents to the amounts claimed and deducted. In 1938 petitioner claimed a deduction for depreciation at the same rates. The Commissioner determined that the useful life of the equipment was longer than petitioner claimed and that therefore lower depreciation rates should be used.[2] Accordingly a deficiency was computed. The depreciation theretofore claimed as deductions was subtracted from the cost of the property. The remainder was taken as the new basis for computing depreciation. A lesser deduction for depreciation accordingly was allowed.[3] There had been a net gain for some of the years in question. For the years 1931 to 1936 inclusive there was a net loss and, says the stipulation, "the entire amount of depreciation deducted on the income tax returns for those years did not serve to reduce the taxable income." Petitioner does

---

[1] 15% on carpets and 10% on all other equipment. At those rates the properties would have been fully depreciated in 6⅔ and 10 years respectively.

[2] 8% on carpets and 5% on the other equipment, the estimated life being 12½ years and 20 years respectively.

[3] $1,295.47 for 1938 as compared with $4,341.97 which was claimed. The difference between the depreciation claimed in the loss years and the depreciation properly allowable in such years is $31,400.25.

not challenge the new rates. It contends that the amount of depreciation claimed for the years 1931 to 1936 inclusive in excess of the amount properly allowable should not be subtracted from the depreciation basis, since it did not serve to reduce taxable income in those years. The Tax Court, in reliance on an earlier ruling,[4] held for the petitioner. The Circuit Court of Appeals reversed. 132 F. 2d 909. The case is here on a petition for a writ of certiorari which we granted because of a conflict between the decision below and *Pittsburgh Brewing Co.* v. *Commissioner,* 107 F. 2d 155, decided by the Circuit Court of Appeals for the Third Circuit.

A reasonable allowance for depreciation is one of several items which Congress has declared shall be "allowed" as a deduction in computing net income. Int. Rev. Code § 23 (1). The basis upon which depreciation is to be "allowed" is the cost of the property with proper adjustments for depreciation "to the extent allowed (but not less than the amount allowable) under this Act or prior income tax laws." [5] That provision makes plain that the depreciation basis is reduced by the amount "allowable" each year whether or not it is claimed. *Fidelity-Philadelphia Trust Co.* v. *Commissioner,* 47 F. 2d 36. Moreover the basis must be reduced by that amount even though no tax benefit results from the use of depreciation as a deduction. Wear and tear do not wait on net income. Nor can depreciation be accumulated and held for use in that year in which it will bring the taxpayer the most tax benefit.

---

[4] Kennedy Laundry Co. *v.* Commissioner, 46 B. T. A. 70, which followed *Pittsburgh Brewing Co.* v. *Commissioner,* 107 F. 2d 155. Prior to the Kennedy Laundry Co. case and prior to the time when Pittsburgh Brewing Co. *v.* Commissioner, 37 B. T. A. 439, was overruled, the Tax Court took a contrary view. Its decision in the Kennedy Laundry Co. case was reversed by the Circuit Court of Appeals. 133 F. 2d 660.

[5] Sec. 113 (b) (1) (B), which is made applicable by reason of § 23 (n), § 114, and § 113 (a).

Congress has elected to make the year the unit of taxation. *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359. Thus the amount "allowable" must be taken each year. *United States* v. *Ludey*, 274 U. S. 295, 304.

But it is said that "allowed," unlike "allowable," connotes the receipt of a tax benefit. The argument is that though depreciation in excess of an "allowable" amount is claimed by the taxpayer and not disallowed by the Commissioner, it is nevertheless not "allowed" if the deductions other than depreciation are sufficient to produce a loss for the year in question. "Allowed" in this setting plainly has the effect of requiring a reduction of the depreciation basis by an amount which is in excess of depreciation properly deductible. We do not agree, however, with the contention that such a reduction must be made only to the extent that the deduction for depreciation has resulted in a tax benefit. The requirement that the basis should be adjusted for depreciation "to the extent allowed (but not less than the amount allowable)" first appeared in the Revenue Act of 1932. 47 Stat. 169, 201. Prior to that time the adjustment required was for the amount of depreciation "allowable." [6] The purpose of the amendment in 1932 was to make sure that taxpayers who had made excessive deductions in one year could not reduce the depreciation basis by the lesser amount of depreciation which was "allowable." If they could, then the government might be barred from collecting additional taxes which would have been payable had the lower rate been used originally. [7] But we find no suggestion that "allowed," as

---

[6] For a summary of the legislative history, see 40 Col. L. Rev. 540.

[7] S. Rep. No. 665, 72d Cong., 1st Sess., p. 29: "The Treasury has frequently encountered cases where a taxpayer, who has taken and been allowed depreciation deductions at a certain rate consistently over a period of years, later finds it to his advantage to claim that the allowances so made to him were excessive and that the amounts which were in fact 'allowable' were much less. By this time the Government may

distinguished from "allowable," depreciation is confined to those deductions which result in tax benefits. "Allowed" connotes a grant. Under our federal tax system there is no machinery for formal allowances of deductions from gross income. Deductions stand if the Commissioner takes no steps to challenge them. Income tax returns entail numerous deductions. If the deductions are not challenged, they certainly are "allowed," since tax liability is then determined on the basis of the returns. Apart from contested cases, that is indeed the only way in which deductions are "allowed." And when all deductions are treated alike by the taxpayer and by the Commissioner, it is difficult to see why some items may be said to be "allowed" and others not "allowed." [8] It would take clear and compelling indications for us to conclude that "al-

be barred from collecting the additional taxes which would be due for the prior years upon the strength of the taxpayer's present contentions. The Treasury is obliged to rely very largely upon the good faith and judgment of the taxpayer in the determination of the allowances for depreciation, since these are primarily matters of judgment and are governed by facts particularly within the knowledge of the taxpayer, and the Treasury should not be penalized for having approved the taxpayer's deductions. While the committee does not regard the existing law as countenancing any such inequitable results, it believes the new bill should specifically preclude any such possibility."

[8] As we have noted, the stipulation of facts states that "the entire amount of depreciation deducted on the income tax returns" for the years in question "did not serve to reduce the taxable income." That has been taken to mean that no part of the depreciation deduction resulted in tax benefits. We do not stop to inquire how that could be true when the depreciation deducted on each return from 1931 through 1936 was larger than the net loss for each of those years. If the stipulation were not accepted, one other problem would be presented. That is the theory that when there is a loss, depreciation may be singled out as not offsetting gross income, even though it is only one of several deductions which is claimed. See Kennedy Laundry Co. v. Commissioner, 46 B. T. A. 70, 75, Judge Disney dissenting. In view of the stipulation, we do not reach that question. Cf. *Butler Bros.* v. *McColgan,* 315 U. S. 501, 508–509.

lowed" as used in § 113 (b) (1) (B) means something different than it does in the general setting of the revenue acts. See *Helvering* v. *State-Planters Bank & Trust Co.*, 130 F. 2d 44.

Congress has provided for deductions of annual amounts of depreciation which, along with salvage value, will replace the original investment of the property at the time of its retirement. *United States* v. *Ludey, supra; Detroit Edison Co.* v. *Commissioner, ante,* p. 98. The rule which has been fashioned by the court below deprives the taxpayer of no portion of that deduction. Under that rule, taxpayers often will not recover their investment tax-free. But Congress has made no such guarantee. Nor has Congress indicated that a taxpayer who has obtained no tax advantage from a depreciation deduction should be allowed to take it a second time. The policy which does not permit the second deduction in case of "allowable" depreciation (*Beckridge Corp.* v. *Commissioner,* 129 F. 2d 318) is equally cogent as respects depreciation which is "allowed."

*Affirmed.*

Mr. Chief Justice Stone, dissenting:

It is true that the 1938 Revenue Act does not speak of a "tax benefit" to the taxpayer. Section 23 speaks only of deductions from gross income which "shall be allowed" in computing net income, among which it includes, § 23 (1), "a reasonable allowance for the exhaustion, wear and tear of property used in trade or business." And by § 113 (b) (1) (B) the basis for depreciation of property is its cost adjusted by depreciation "to the extent allowed (but not less than the amount allowable)." It is equally true and obvious, and of some importance to the correct interpretation of the statute, that any depreciation in excess of the reasonable allowance authorized can, under the statute, result in no tax advantage to the taxpayer

and in no tax prejudice to the Government, unless the excess has in fact been deducted from the taxpayer's gross income.

I can find no warrant in the purpose or the words of the statute, or in the principles of accounting, for our saying that the taxpayer is required to reduce his depreciation base by any amount in excess of the depreciation "allowable," which excess he never has in fact deducted from gross income. Whatever else the statutory reference to depreciation "allowed" may mean, it obviously cannot and ought not to be construed to mean that a deduction for depreciation which has never in fact been subtracted from gross income is a deduction "allowed."

And there is no reason why such should be deemed to be its meaning. The only function of depreciation in the income tax laws is the establishment of an amount, which may be deducted annually from gross income, sufficient in the aggregate to restore a wasting capital asset at the end of its estimated life. The scheme of the 1938 Revenue Act is to prescribe the permissible deductions for depreciation, and to preclude the taxpayer from gaining any unwarranted advantage by the amount and distribution of those deductions. The Act accomplishes the latter by compelling the taxpayer to reduce his depreciation base by the amount of the allowable annual depreciation, whether deducted from gross income or not, and by such further amount as he has in fact deducted from gross income. No reason is suggested why the taxpayer's tax for future years should be increased by reducing his depreciation base by any amount in excess of the depreciation "allowable," unless the excess has at some time and in some manner been deducted from gross income. So inequitable a result cannot rightly be achieved by saying that a "deduction" for depreciation which never has been deducted from gross income has nevertheless been "allowed."

What I have said does not imply that a taxpayer, who has deducted excessive depreciation from his gross income in any year, is not subject to a deficiency assessment as the statutes and regulations prescribe; or that excessive deductions for depreciation taken from gross income—or allowable depreciation, whether so deducted or not—may not properly be used to reduce the taxpayer's depreciation base. The statute so provides. But I do assert that, under the system of taxation which we have established, the overstatement of the taxpayer's depreciation base on which the Government insists is not to be justified because the taxpayer may in some other year have deducted from gross income excessive depreciation which has already been subtracted from his depreciation base. See *Burnet v. Sanford & Brooks Co.*, 282 U. S. 359, 365. The statute neither compels nor permits so incongruous a result. The judgment should be reversed.

MR. JUSTICE ROBERTS, MR. JUSTICE MURPHY and MR. JUSTICE JACKSON join in this dissent.

MR. JUSTICE JACKSON, dissenting:

The first and fundamental step in determining accrued depreciation is to estimate the probable useful life of the property to be depreciated. This depends upon judgment and is not capable of exact determination. When it is found, and after making allowance for probable salvage value at the time of retirement, it is a mere matter of mathematics to compute under the straight-line method the rate of annual accrual.

This rate when applied to the cost of the depreciable property fixes two things: (1) The amount of the depreciation accrual to deduct from gross, before determining net, income. For this purpose a high rate works in favor of the taxpayer for any given year. (2) It also determines the amount by which the cost base must be reduced

for application of depreciation rates the following year. In this aspect a high depreciation rate works in favor of the Government.

The Virginian Hotel Corporation misconceived, as the Commissioner thinks, the probable life of its depreciable property. Attributing to it a longer life span, he corrected that judgment. To apply that correction consistently would lower the rate and consequent deduction on account of depreciation and cause a smaller subtraction from the valuation base, leaving a larger base to which the smaller rate would be applied.

The Commissioner proposed to correct taxpayer's returns by considering only the year in question. He eliminated the error as far as it affected the rate and thus reduced the depreciation accrual and increased the tax. But he retained the base as reduced by the taxpayer's accumulated errors, refusing to readjust the base consistently with the corrected depreciation rates.

To the extent that the taxpayer had obtained advantage from the use of the higher depreciation rate, I would think it quite justifiable to refuse to make a correction. The Government, however, stipulates as to the years in question that "the entire amount of the depreciation deducted on the income tax returns for those years did not serve to reduce the taxable income." We should not disregard a deliberately made stipulation, even if, on our limited knowledge of its background, we are in doubt as to why it was made. The question comes simply to this: Whether the Commissioner, upon determining whether taxpayer has in good faith erred, may use a correction in so far as it helps the Government and adhere to the mistake in so far as it injures the taxpayer. I think that no straining should be done to find a construction of the statutes that will support the result.

I am the less inclined to lay down a rule that will permit the Government to make inconsistent corrections in the

matter of depreciation because consistency in the matter of depreciation is one of the few important principles of its application. There has been no more futile tax litigation than that over depreciation rates. In an era of rising taxes the faster a taxpayer depleted his base for depreciation the more the Government realized in revenue from him. If this present taxpayer had been permitted to continue its high depreciation rates, it would have come into the present era of exceedingly high taxes with its depreciation base correspondingly exhausted. What is important for the protection of the revenues is that accrual for depreciation be applied only to property that is properly depreciable, that it be stopped when the property is fully depreciated, and that the rate be consistently applied so that the taxpayer cannot choose to take only a little depreciation when he has a little income and a lot of depreciation when he has a large income. If these conditions are observed, litigation about the rate serves chiefly to vindicate theories rather than to protect the revenues.

If the Government desires to make revisions of theoretical rates, there is no reason why it should not observe the rule of consistency that is one of the cardinal rules to impose on the taxpayer. Hence, I join in the dissenting opinion of the CHIEF JUSTICE.