CRABTREE, J.T.C.
Plaintiffs[1] seek review of defendant’s determination of a deficiency in gross income tax for the taxable year 1988 in the amount of $178,593.75, including a 5% late payment penalty and interest' calculated to May 16, 1992. Defendant determined that, in computing plaintiffs distributive share of gain from the disposition of partnership property, the property’s adjusted basis for federal income tax purposes must be used, even though plaintiff derived no tax benefit for New Jersey gross income tax purposes in prior years from his share of partnership losses, which were primarily attributable to depreciation deductions claimed by the partnerships in those earlier years. In their brief, plaintiffs also claim that even if they realized a share of the gain realized by the partnerships with respect to the disposition of partnership property in 1988, such gain was fully offset by a loss on the simultaneous disposition of Mr. Schiff s partnership interests.
Also, plaintiffs claim that the deficiency notice was untimely as it was not issued within three years after the return was filed.
The case came before this court on plaintiffs’ motion for summary judgment and defendant’s cross motion for summary judgment. At the court’s direction the parties submitted a supplemental stipulation of facts. As the facts are now undisputed the case is ripe for adjudication.
Plaintiffs filed their 1988 New Jersey gross income tax return on or before April 15, 1989, a date which fell on Saturday. Defendant’s deficiency notice was mailed in an envelope bearing a private postage meter postmark of April 17, 1992. No other postmark appeared on the envelope. The brief in support of defendant’s cross motion was accompanied by an affidavit from Stuart Gossoff, the plant manager of the United States Postal Service’s processing and distribution center in Trent on, New Jersey. Mr. Gossoff stated that, in accordance with standard *373 Postal Service procedures, any first class mail envelope received by the Postal Service bearing sender applied postage metering that contains a date that is either the current date or a later date will be processed by Postal Service personnel, who will not put another date on the envelope. If, on the other hand, any first class mail envelope received by the Postal Service bearing sender applied postage metering that contains a date that is earlier than the current date will be processed by Postal Service personnel, who will put another date on the envelope indicating the date of the Postal Service’s receipt of the envelope. Thus, he continued, in accordance with these procedures, if a first class mail envelope mailed by the New Jersey Division of Taxation and bearing postage metering applied by the Division that contains the date of April 17,1992, was processed by Postal Service personnel, who did not put another date on the envelope, that envelope, he said, must have been delivered to the Postal Service on or before April 17, 1992.
Plaintiff acquired a limited partnership interest in Riverside Ltd., a California limited partnership (hereafter Riverside), in 1979[2]. While the record does not indicate the amount plaintiff paid for his interest in Riverside, the record is clear that by the time his interest in Riverside terminated in 1988, the federal income tax basis in that interest was reduced to zero.
Riverside was formed for the purpose of acquiring 114.5 acres of land in Riverside County, California, and holding it for capital appreciation. Riverside purchased the land, on July 6, 1979, for $37,000 cash and a purchase money mortgage of $3,663,000. On May 1, 1988, Riverside conveyed the land to the holder of the mortgage in lieu of foreclosure. Immediately thereafter, but still in 1988, Riverside discontinued all business operations and dis *374 posed of all its assets in satisfaction of its liabilities. Except for a cash distribution of $75,676, in 1987, out of the proceeds of sale of 1.962 acres of land, Riverside made no actual distributions to any of its limited partners (including plaintiff) at any time between 1979, when it was formed, and 1988, when it went out of business, or at any time thereafter.
The amount of principal and accrued interest due on the mortgage at the time of the conveyance in lieu of foreclosure was $2,485,684. Plaintiffs allocable share of this indebtedness was $84,301.
Plaintiff became a limited partner in Colonial House, Ltd., a Texas limited partnership (hereafter Colonial), in 1984, paying at that time $1,500,000 in cash for his interest. On September 12, 1988, Colonial conveyed its real property in Harris County, Texas, to the mortgagee of such property by deed in lieu of foreclosure. Colonial ceased all operations in 1988, following the conveyance as aforesaid; it had no assets and engaged in no business activity after 1988. Colonial made no actual distributions to any of its limited partners, including plaintiff, between 1984, when it was formed, and 1988, when it went out of business, or at any time thereafter.
The amount of principal and accrued interest due on the mortgage at the time of the conveyance in lieu of foreclosure was $25,970,911. Plaintiffs allocable share of that indebtedness was $3,004,336. The federal income tax basis in plaintiffs partnership interest in Colonial at the time of the conveyance in lieu of foreclosure was reduced to zero.
On their 1988 federal income tax return, plaintiffs reported capital gains of $3,086,111, composed of their distributive shares of the gains attributable to the Riverside and Colonial foreclosures ($84,301 and $3,004,336, respectively,[3] less $2,526 in capital loss *375 carryovers). Plaintiffs reported the Riverside and Colonial transactions on their 1988 New Jersey gross income tax return but assigned a gain of zero. Upon audit, defendant determined that plaintiffs should have reported the same gain on their New Jersey return as they reported on their federal return and determined a deficiency accordingly.

The Limitations Issue

N.J.S.A 54A:9-4(a) provides that gross income tax shall be assessed (with exceptions not material here) within three years after the return was filed. N.J.S.A. 54A:9-4(b)(1) provides that a gross income tax return filed before the last day prescribed by law shall be deemed to be filed on such last day. N.J.S.A. 54A:9-11(c) provides, in substance, that when the last day prescribed for filing falls on a Saturday, Sunday or holiday, the return is timely if it is filed on the next succeeding business day. In this case, plaintiffs’ 1988 gross income tax return was apparently filed on a Saturday (April 15, 1989). Thus, under the last mentioned statute, the return was deemed filed on Monday, April 17, 1989. That being so, the notice of deficiency issued on April 17, 1992 was timely. It is well settled in this state, that when there is a legal requirement of a number of days, months or years for the doing of an act, the computation excludes the first day and includes the last, absent a contrary legislative indication. DeLisle v. City of Camden, 67 N.J.Super. 587, 171 A.2d 346 (App.Div.1961); Warshaw v. DeMayo, 8 N.J.Misc. 359, 150 A. 214 (Sup.Ct.1930); McCulloch v. Hopper, 47 N.J.L. 189 (Sup.Ct.1885).
Plaintiffs raise the issue of timely mailing, challenging the conclusive effect of a private postage meter postmark appearing on the envelope transmitting the notice of deficiency. Defendant counters with the affidavit of Stuart Gossoff, an employee of the United States Postal Service, who stated that, whenever first class mail is delivered to the Postal Service bearing a sender-applied *376 postage metered date that is either the current date or a later date, Postal Service personnel will not put another date on the envelope. The envelope containing the notice of deficiency, in evidence, bears only the postage metered postmark.
Plaintiffs attempt to refute Mr. Gossoff s affidavit by a supplemental certification of Steven Richman, one of plaintiffs’ attorneys. In that certification, Mr. Richman describes an experiment he conducted, which involved mailing three envelopes, each bearing a different date, in May 1995, imprinted by a postage meter, to his office in Princeton, New Jersey. He claims that these envelopes were taken to the post office on May 18, 1995. The envelope bearing the postage meter marking of May 15,1995, he continues, was not delivered to his office until May 22, 1995, and it did not bear a postmark date imprinted by the Post Office.
Counsel’s experiment does not confute the Gossoff affidavit. To defeat a summary judgment motion (in this case, defendant’s cross motion), the adverse party must respond with an affidavit or certification setting forth specific facts showing that there is a genuine issue for trial. R. 4:46-5. The experiment described in the Richman certification merely shows that at another post office, and at another time, the practice of the Postal Service regarding sender süpplied postmarks, as described in the Gossoff affidavit, was not followed. The Richman experiment does not serve to dispel the inference which the court may draw from the evidence of the Postal Service practice, as contained in the Gossoff affidavit, that the practice was followed in the case of the mailing of the deficiency notice on April 17,1992. N.J.R.E. 406.
Accordingly, the court concludes that the deficiency notice in question was timely issued.

The Substantive Issue

The statute relevant to the disposition of the substantive issue is N.J.S.A 54A:5-l(c), which provides:
[N]et gains or net income, less net losses, derived from the sale, exchange or other disposition of property, including real or personal, whether tangible or intangible, as determined in accordance with the method of accounting allowed for *377 federal income tax purposes. For the purpose of determining gain or loss, the basis of property shall be the adjusted basis used for federal income tax purposes. (Emphasis supplied)
Defendant, relying upon the statute, concluded that plaintiffs were obliged to use, for New Jersey gross income tax purposes, the federal income tax basis in calculating their distributive share of the gain realized by Riverside and Colonial in connection with the conveyances of partnership property in lieu of foreclosure and determined the deficiency accordingly. Plaintiffs, in their complaint, challenged defendant’s determination on the ground that, as they were unable to use the losses passed through to them by the partnerships in prior years because of the prohibition in N.J.S.A. 54A:5-2 against netting of intercategory gains and losses, it would be inequitable to require them to use the federal income tax basis in determining gain for New Jersey gross income tax purposes. In the alternative, plaintiffs argue on brief that even if the federal income tax basis were used, their distributive share of the gain realized on the conveyances of partnership property in lieu of foreclosure would be fully offset by the capital loss realized on the disposition of Mr. Schiffs interest in the partnerships.
The first issue raised by plaintiffs, namely, the alleged inequity of requiring the use of the federal income tax basis in accordance with N.J.S.A. 54A:5-1(c), must be resolved in defendant’s favor. This court has held on two occasions that in determining gain on the sale, exchange or other disposition of property for New Jersey gross income tax purposes, federal income tax basis must be used, even though such basis was reduced in prior years by losses that were not deductible for New Jersey tax purposes. Vasudev v. Taxation Div. Director, 13 N.J.Tax 223 (Tax 1993); Spinella v. Director, Div. of Taxation, 13 N.J.Tax 305 (Tax 1993). Thus, plaintiffs’ inability to deduct prior years’ partnership losses for New Jersey gross income tax purposes, because of the prohibition of N.J.S.A. 54A:5-2 against netting of intercategory gains and losses, is irrelevant to the application of N.J.S.A. 54A:5-1(c), which mandates the use of federal income tax basis in determining gain on the sale of property.
*378 Plaintiffs’ second argument, advanced for the first time on brief, is more troublesome. Plaintiff contends that his distributive share of any gain realized by the partnerships upon the transfers in lieu of foreclosure is completely offset by the loss upon the disposition of his interests in the partnerships. This argument is based entirely on the partnership provisions of the federal Internal Revenue Code. As the issue raised by the argument is one of first impression in this court, it behooves us to examine the cases decided in the United States Tax Court, as well as the Code provisions and Treasury Regulations upon which the decisions in those cases are based, for guidance in resolving the issue.
To put the decided cases in context, it is in order to examine the relevant Code sections and Treasury Regulations dealing with the treatment of partnership liabilities.
To begin with, section 731(a) of the Code provides that in the case of a distribution by a partnership to a partner, gain shall be recognized to such partner to the extent that any money distributed exceeds the adjusted basis of the partner’s interest in the partnership immediately before the distribution and that any gain recognized shall be considered as gain from the sale or exchange of the partnership interest of the distributee partner. Section 741 of the Code provides that such gain (or loss) is considered as gain or loss from the sale or exchange of a capital asset.
Code section 752(b) provides that any decrease in a partner’s share of partnership liabilities shall be considered as a distribution of money to the partner by the partnership. Section 752(c) provides that a liability to which property is subject shall be considered as a liability of the owner of the property.
To the extent that none of the partners has any personal liability and thus, no risk of loss with respect to a partnership liability, ie., the liability is nonrecourse, then all the partners, including limited partners, share such liability in the same proportion as they share profits. See Willis, Pennell and Postlewaite, Partnership Taxation, (5 ed. 1995), sec. 32.02; Treas.Reg. 1.752-3. In this connection, the Internal Revenue Service, in Rev.Rul. 74-40, C.B. 1974-1,159, ruled in three situations in which a limited *379 partner, •with no liability for partnership debts, either withdrew from the partnership or sold his interest therein, that his distributive share of partnership liabilities was deemed a distribution of money and was includible in the gain realized on the sale of his partnership interest or his withdrawal from the partnership. The treatment of the abandonment of a limited partner’s interest in an insolvent partnership was addressed in Rev.Rul. 93-80, C.B. 1993-2,239, where the Service ruled that a loss incurred on the abandonment or worthlessness of a partnership interest is an ordinary loss if sale or exchange treatment is inapplicable, but if there were an actual distribution of cash or property, or a deemed distribution within the purview of section 752(b), ie., a reduction in the partner’s share of liabilities, the transaction is treated as a sale or exchange, and the loss is thus capital in nature.
The decided cases in the United States Tax Court provide further illumination of the issue. For example, in Pietz v. Commissioner of Internal Revenue, 59 T.C. 207,1972 WL 2506 (1972), the taxpayers were equal partners with others in a partnership formed to operate a motel. The venture was unsuccessful, and the motel and its furnishings were sold. The purchaser paid $60,000 in cash, assumed the mortgage and gave a second mortgage to the other partners, leaving the partnership with no assets. The taxpayers, suffering a loss of their investment upon termination of the partnership, claimed an ordinary loss for federal tax purposes. The Tax Court held that the loss was capital in nature and upheld the Commissioner’s deficiency determination, saying:
We believe and find that the sale of the motel and the application of the proceeds to payment of the indebtedness to the bank, with the second mortgage being distributed to the Grants, was an integral part of the plan agreed upon by the partners to liquidate and terminate the unsuccessful partnership venture in a manner that would satisfy all the partners and be in their best interests; and that payment of the debt to the bank was a part of the liquidation process agreed upon. While the parties place considerable emphasis on whether the $60,000 liability to the bank was a partnership liability or a liability of the petitioners individually, we do not believe it makes much difference in the end result, under the particular circumstances of this case, and we have made no effort to answer that question specifically. If it was a liability of the petitioners individually it would appear that through the interplay of sections 752(b), 731, and 741, the payment of that liability by the partnership would be considered a distribution of money to petitioners in *380 liquidation and any loss recognized would be considered a loss from the sale or exchange of their partnership interests____
On the other hand, if the liability was that of the partnership, the payment of that liability by the partnership would result in a decrease in each of the partners’ share of the liabilities of the partnership and would be considered as a distribution of money to the partners by the partnership under section 752(b). This being a distribution in liquidation of the petitioners’ interest in the partnership, and being considered a distribution of money, loss would be recognized to the petitioners under section 731(a)(2) but it would be considered a loss from the sale or exchange of the partnership interests of the petitioners under section 731(a). This would bring into play section 741 and the loss would be considered as a loss from the sale or exchange of a capital asset, resulting in a capital loss____
[at 217-218]
In O’Brien v. Commissioner of Internal Revenue, 77 T.C. 113, 1981 WL 11269 (1981), the taxpayer held a 10% interest in a partnership or joint venture which acquired real estate by giving nonrecourse notes. On December 3, 1976, taxpayer wrote to the general partner stating that he abandoned his interest in the partnership as of that date. At the time, the partnership had nonrecourse liabilities of $989,549. The venture continued after the taxpayer’s withdrawal. On his 1976 federal income tax return, taxpayer claimed an ordinary loss of $14,865.30. In affirming the Commissioner’s disallowance of the loss as an ordinary loss, the Tax Court concluded that when the taxpayer terminated his partnership interest by abandoning it, he was relieved of his full share of the partnership’s nonrecourse liabilities. As a result of this “decrease,” the court went on, the taxpayer was deemed to have received a distribution of money from the partnership in the amount of his share of the partnership liabilities, and that under section 731(a)(2), the deemed distribution liquidated his interest in the partnership and the resulting loss was considered as a loss from the sale or exchange of his partnership interest. In relating the taxpayer’s lack of personal liability to the deemed distribution provisions of section 752(b), the court observed:
Notwithstanding petitioner’s lack of personal liability for any part of this partnership indebtedness, as long as he continued to be a partner he was considered as sharing proportionately with the other partners in such indebtedness for the purpose of determining the adjusted basis of his partnership interest by reason, as pointed out above, of section 752(c), and section 1.752-l(e), Income Tax Regs. Petitioner’s abandonment of his partnership interest resulted in a decrease in his share of the partnership liabilities within the meaning of section 752(b), not
*381 because he ever had personal liability under State law, but because he is no longer considered under the applicable Code provisions as sharing in the nonrecourse liabilities of the partnership.
Petitioner also contends that no distribution in liquidation occurred, and that therefore section 731 is inapplicable. Although it is true that petitioner did not receive an actual cash distribution, petitioner is “considered” by virtue of section 752(b) to have received a “distribution of money” when he was relieved of his share of the partnership’s nonrecourse debts. Moreover, this “distribution” occurred upon the termination by abandonment of petitioner’s partnership interest. Therefore, petitioner is deemed to have received this distribution in liquidation of his partnership interest.
[at 118]
Finally, the case of Tapper v. Commissioner of Internal Revenue, TC Memo. 1986-597[4] is particularly significant, as the facts of that case are similar to the facts of the case under review.
In Tapper, the taxpayers[5] were general partners in a limited partnership organized to construct a post office facility in Kearny, New Jersey. The facility, the only asset of the partnership, was built in 1968 and leased to the United States Government under a long-term lease. In August of 1978, the partnership sold the facility to the Government for $26,201,556, which included cash of $4,022,866 and the assumption of the mortgage on the property of $22,178,690. Thereafter, but prior to the end of 1978, the partnership was dissolved by the general partners pursuant to the partnership agreement. No distributions (except for the deemed distributions hereafter described) were made to any of the partners, either with respect to the sale of the post office facility or in connection with the dissolution of the partnership.
*382 The partnership realized a capital gain on the sale of the post office building of $3,548,291, of which $183,294 was allocable to the taxpayers. The partnership realized ordinary income (attributable to depreciation recapture pursuant to section 1250 of the Code) from the sále of $3,326,817, of which $263,484 was allocable to the taxpayers. When the Government assumed the mortgage on the post office facility, the partnership was relieved of liabilities of $22,178,690. The taxpayers’ proportionate share of that liability was $1,756,552.
The taxpayers claimed an ordinary loss, under Code section 165, upon the dissolution and liquidation of the partnership. The court agreed with the Commissioner and held that the loss was capital in nature. In ruling upon the character of the loss, the court said, at pp. 12-13[6]:
In essence, petitioners argue that the sale of the post office (and their consequent release from liability under the mortgage) was unrelated to the subsequent liquidation of the partnership, and therefore that at the time of liquidation their partnership interest was worthless. If they received no distribution upon liquidation, petitioners argue, they should not be treated by section 731(a) as having sold or exchanged their partnership interest, and thus should be entitled to claim an ordinary loss under section 165 upon ‘abandoning1 their partnership interest.
Respondent maintains that the sale of the post office facility and subsequent liquidation of the partnership were part of an integrated plan of dissolution of the partnership, and thus that any loss realized is capital in nature. We agree with respondent. Section 731 provides that loss recognized by a partner who receives a distribution in liquidation of his partnership interest shall be treated as if it were derived from the sale or exchange of the partnership interest. Section 741 generally treats the sale or exchange of a partnership interest as the sale or exchange of a capital asset. Section 761(d) provides that the term ‘liquidation of a partner’s interest’ means ‘the termination of a partner’s entire interest in a partnership’ by means of a distribution, or series of distributions, to the partner by the partnership____
From these facts it becomes clear that the sale of the post office resulted in a distribution to petitioner in complete termination of his partnership interest. The building was the only asset the partnership owned. What remained to be done and what was required to be done after the building was sold was simply to wind up the affairs of the partnership before terminating it. Thus, when the building was sold, petitioner received a distribution (in the form of relief from liability) of his share of *383 the assets of the partnership. Because we view the sale of the facility and the subsequent liquidation of the partnership as steps in an integrated transaction, this case is governed by section 731(a)(2), which provides that loss may be recognized by a partner who receives a distribution in liquidation of his partnership interest, if the distribution consists solely of, inter alia, ‘money.’ Section 752(b) provides that any decrease in a partner’s share of liabilities of a partnership shall be considered as a distribution of money to the partner by the partnership. Thus, the purchaser’s assumption of the mortgage on the postal facility is treated as a distribution of money to petitioner to the extent of his proportionate share of partnership liabilities. To the extent that his basis in his partnership interest exceeds the amount of this deemed distribution, petitioner is entitled to claim a loss. The character of the loss is governed by sections 731(a) and 741, which provide that the loss is considered to have been derived from the sale or exchange of the partner’s interest in the partnership, a capital asset.
Having determined the character of the loss, the court addressed the calculation of the taxpayers’ basis in their partnership interests in aid of measuring the extent of the allowable loss. Basis had to be determined because of another issue in the case which is irrelevant to the case under review. The court’s calculation of basis is significant because it underscores the interplay between the taxpayers’ share of the capital gain and ordinary income realized by the partnership upon the sale of the post office building and the treatment of the disposition of the taxpayers’ interests in the partnership in connection with the latter’s liquidation soon after the sale. The court’s calculations were as
follows:
Basis as of 1/1/78.........................$1,206,984
Capital contribution during 1978 ............$187,790
Capital contribution of December 26, 1978... $225,000
Capital gain on sale of facility in 1978 ........$183,294[7]
Ordinary income from sale of facility in
1978.....................................$263,284
*384 Ordinary loss from operations in 1978........($108,450)
Taxpayers’ basis before distributions........$1,958,102
Deemed distribution on dissolution (decrease in taxpayers’ share of partnership liabilities)...............................$1,756,552
Taxpayers’ loss on dissolution...............$201,550
The most significant feature of the foregoing calculation is the implicit recognition of the fact that two taxable events occurred, notwithstanding the court’s conclusion that the sale of partnership property and the dissolution of the partnership were part of an integrated transaction. First was the income realized by the partnership from the sale of the post office building and passed through to the taxpayers. The second was the amount realized upon the partnership’s dissolution from the deemed distribution, i.e., the decrease of the taxpayers’ share of partnership liabilities.
The following conclusions can be drawn from the foregoing cases, statutes, Regulations and Revenue Rulings:
1. Distributions to partners in excess of basis are treated, under section 731, as sales or exchanges of partnership interests; and a sale or exchange of a partnership interest is capital in nature.
2. Any decrease in a partner’s share of partnership liabilities is treated the same as a cash distribution (a deemed distribution).
3. Deemed distributions apply to nonrecourse liabilities and to limited partners who are not liable for partnership debts.
4. The abandonment of a partnership interest and the dissolution of a partnership are treated as a sale or exchange of a partnership interest when a partner’s share of partnership liabilities (including nonrecourse liabilities and liabilities attributable to a limited partner) is reduced.
*385 5. A mortgage foreclosure (or a transfer of mortgaged property in lieu thereof) is a sale or exchange of partnership property giving rise to capital gain treatment.
6. However, while a distributive share of such capital gain is taxable to a partner in accordance with his interest in the partnership, if such share is not distributed to the partner (and it certainly cannot be distributed if the transaction giving rise to the gain is a mortgage foreclosure), the gain recognized to the partner is added to the basis of his partnership interest. See section 705(a) of the Code.
7. The mortgage foreclosure giving rise to the capital gain also results in a decrease in the partner’s share of partnership liabilities, which as indicated above, is a deemed distribution which is capital in nature and gives rise to capital gain or loss with respect to the partner’s interest in the partnership upon the dissolution or liquidation of the partnership.
Application of these conclusions to the facts in the case under review discloses the following:
Plaintiffs basis in his interests in the partnerships, which the court has found to be zero at the beginning of the taxable year before the court, is increased by his distributive share of the capital gains realized by the partnerships upon the conveyance of partnership property in lieu of foreclosure, such property being, in the case of each partnership, the sole partnership asset.
Each partnership terminated its business immediately following the transfer of its sole asset.
Plaintiffs distributive share of the partnership mortgage debt was equal to his distributive share of the capital gain realized by the partnerships upon the transfers in lieu of foreclosure.
The deemed distribution represented by the reduction of plaintiffs share of partnership liabilities was part of an integrated transaction composed of the transfers in lieu of foreclosure of the sole assets of the partnerships and the de facto dissolution and liquidation of the partnerships. The transfers in lieu of foreclosure gave rise to capital gain to the partnerships, a distributive *386 share of which was passed through to plaintiff, while the dissolution and liquidation of the partnerships gave rise to a disposition of plaintiffs interests in the partnerships.
Thus, there are two taxable events here.[8] One is the disposition of plaintiffs interests in the partnerships; the other is the capital gain realized by the partnerships upon the transfers in lieu of foreclosure.
Plaintiff realized no gain or loss on the disposition of his partnership interests, as the following calculation will show:
Basis in partnership interests on 1/1/88..........-0-
Plaintiffs share of capital gain added to basis:
Riverside...................................$84,401
Colonial..................................$3,004,336
Basis before distribution....................$3,088,637
Less deemed distribution (decrease in liabili- • ties).....................................$3,088,637
Gain (or Loss).............................$ -0-
Notwithstanding the absence of gain on the disposition of plaintiffs partnership interests, he remains liable under N.J.S.A. 54A:5-l(c) for his distributive share of the capital gain realized by the partnerships upon the transfers in lieu of foreclosure of partnership properties. Plaintiffs 1988 federal income tax return *387 shows his distributive share of such gain to be $84,401 for Riverside and $3,004,336 for Colonial. As indicated above, federal income tax basis must be used for New Jersey gross income tax purposes, so the amount of gain reported for federal purposes must also be reported for New Jersey purposes.
Defendant’s deficiency assessment is upheld. Judgment will be entered in accordance with this opinion.

 Hereinafter, throughout this opinion, whenever the singular plaintiff is used, it will refer to Daniel Schiff, the investor involved in the transactions to be described. Adelaide Schiff is a party only because a joint return was filed.

 Plaintiffs' 1988 New Jersey gross income tax return indicates the date of acquisition to be November 2, 1983, a date which is at variance with the parties’ stipulation of facts. The 1983 date would appear to be incorrect as the Schedule K-l of IRS Form 1065 (the partnership return) issued to plaintiff for 1983, shows a negative capital account for plaintiff of -$14,754. This is a clear indication that plaintiff acquired his interest in Riverside in a year prior to 1983.

 A mortgage foreclosure constitutes a sale or exchange of properly for federal income tax purposes; the amount realized is measured by the amount of principal and interest due on the mortgage debt at the time of the foreclosure. *375 Commissioner of Internal Revenue v. Tufts, 461 U.S. 300, 103 S.Ct. 1826, 75 L.Ed.2d 863 (1983).

 The cited opinion is not officially published; only those Tax Court reports published by the United States Government Printing Office are authorized publications. See section 7462 of the Internal Revenue Code. The opinion in Tapper is "published” by the commercial tax reporting services. However, while the opinion is not an authorized publication (by which this court is not bound in any event), it is cited for its persuasive reasoning and the similarity of the facts to the facts in the case sub judice.

 The cases of the two general partners were consolidated for trial and decision.

 Pagination is by Westlaw.

 As there was no distribution of the taxpayers’ share of the capital gain and ordinary income realized upon the partnership's sale of the post office building, such share was added to the basis of their partnership interests. See section 705(a)(1) of the Code.

 The critical issue in this case is the treatment of deemed distributions. For purposes of the New Jersey Gross Income Tax Act, the deemed distributions may be characterized either as gain realized upon the sale, exchange or other disposition of property within the meaning of N.J.S-.A. 54A:5-1(c) (deemed distributions in this case would qualify for capital gain treatment under federal law, as indicated in this opinion), or as partnership distributions cognizable under N.J.S.A. 54A:5-1(k), which includes a partner’s distributive share of partnership income among the categories of income taxable under the New Jersey Gross Income Tax Act. As New Jersey does not provide for differential rates, i.e., one rate for capital gains and another rate for ordinary income, it is irrelevant in this case whether the deemed distribution is treated as capital in nature or as a distributive share of partnership income.