KUSKIN, J.T.C.
These matters arise under the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 to N.J.S.A. 54A:10-12 (the “GIT Act”), specifically N.J.S.A. 54A:5-1(c) which imposes tax on net gains from the disposition of property. Plaintiffs John J. Moroney and Mary T. Moroney (together “the Moroneys”) and plaintiffs Thomas J. Denitzio, Jr. and Susan B. Denitzio (together “the Denitzios”) [1] owned rental properties. The Moroneys sold their property in 1994, and the Denitzios sold their property in 1995. In calculating the Moroneys’ gross income tax liability for 1994 and the Denitzios’ gross income tax liability for 1995, defendant, Director of the New Jersey Division of Taxation, determined that their respective adjusted cost bases in the properties should be reduced by the cumulative depreciation allowable for federal income tax purposes and that both the Moroneys and the Denitzios realized gains on the sales.
In these appeals, plaintiffs contend that, to the extent the annual operating expenses for the properties, exclusive of depreciation, were sufficient to offset annual income, plaintiffs were unable to utilize their depreciation as a deduction. Consequently, they received no tax benefit from the depreciation and, for purposes of calculating taxable gain under the GIT Act, their bases should not have been reduced by the amount of the “unutilized” depreciation. The Moroneys and the Denitzios have each moved, and the Director has cross-moved, for summary judgment. Because both matters involve an identical legal issue, they were heard together, although not formally consolidated. For the reasons set forth below, I grant plaintiffs’ motions and deny the Director’s motions.
The following facts relating to the motions are not in dispute.
The Moroneys acquired a parcel of rental property in Hillsdale, New Jersey in 1986 for a purchase price of $327,899. In 1994, the Moroneys sold the property for a sales price of $245,000. During *223 the period of their ownership, cumulative operating expenses, exclusive of depreciation, exceeded rental income by $82,399. On their 1994 New Jersey gross income tax return, the Moroneys reported a capital loss on the sale of the property of $82,399. They calculated this loss by subtracting the sales price of $245,000 from the purchase price of $327,399. The Director determined that the property’s adjusted basis at the time of sale, exclusive of depreciation, was $274,073, and that cumulative depreciation on the property during the period of the Moroneys’ ownership was $104,330, leaving a final adjusted basis of $169,743. Subtracting this amount from the $245,000 sale price produced a net gain of $75,257 on which the Director imposed gross income tax. The Moroneys and the Director have stipulated that, if the Director’s methodology is appropriate, the tax deficiency owed by the Moro-neys is $10,484.
The Denitzios purchased rental property in Westfield, New Jersey in 1985 and sold the property in 1995 for a sales price of $265,000. At the time of sale, their adjusted basis in the property, exclusive of depreciation, was $235,216. In their initial 1995 gross income tax return, the Denitzios reduced their basis by all depreciation allowed for federal income tax purposes and reported a gain of $121,633. In an amended return, they recalculated their basis by adding back amounts of annual depreciation equal to the annual operating expenses used to offset rental income in their gross income tax returns. This recalculation reduced the gain from $121,633 to $49,640, resulting in a refund claim for $4785 plus statutory interest.
The Director does not dispute the calculations by the Moroneys and the Denitzios of income and operating expenses during the years of their ownership of their respective rental properties, and, therefore, does not dispute the extent to which operating expenses, other than depreciation, were available to offset income. The Director contends, however, that, as properly interpreted, N.J.S.A. 54A:5-1(c) requires that plaintiffs’ respective bases in their rental properties be reduced by amounts equal to cumulative allowable annual depreciation deductions, even if annual operating *224 expenses equal to allowable depreciation were available to offset rental income.
N.J.S.A. 54A:5-1(c) imposes gross income tax on “net gains or income from disposition of property ... as determined in accordance with the method of accounting allowed for federal income tax purposes” and further provides in pertinent part as follows:
For the purpose of determining gain or loss, the basis of property shall be the adjusted basis used for federal income tax purposes, except as expressly provided for under this act, but without a deduction for penalties, fines, or economic benefits excepted pursuant to paragraph (2), or for treble damages excepted pursuant to paragraph (3) of subsection b of this section.
The term “net gains or net income” shall not include gains or income from transactions to the extent to which nonrecognition is allowed for federal income tax purposes.
[N.J.S.A. 54A:5-1(c).]
This statute was interpreted by our Supreme Court in Koch v. Director, Div. of Taxation, 157 N.J. 1, 722 A.2d 918 (1999), in the context of determining basis in a partnership interest sold by Mr. Koch. There, the Director relied on the requirement in N.J.S.A. 54A:5-1(c) that basis shall be “the adjusted basis used for federal income tax purposes” and calculated Mr. Koch’s gain on the sale by treating his basis in the partnership interest as reduced by partnership losses not deductible under the GIT Act. The Director asserted that his calculation was correct because, for federal income tax purposes, partnership losses were deductible and caused a reduction in basis, and the reference in N.J.S.A. 54A:5-1(c) to federal adjusted basis required that the losses reduce basis under the GIT Act even if not deductible under the Act.
In rejecting the Director’s position, the Supreme Court noted that N.J.S.A. 54A:5-1(c) contains three separate references to federal tax law, namely, “the method of accounting allowed for federal income tax purposes,” “the adjusted basis used for federal income tax purposes,” and provisions for nonrecognition of gains or income. The Court considered all three references in determining the appropriate methodology for calculating Mr. Koch’s *225 basis in his partnership interest and held that, under the GIT Act, non-deductible partnership losses do not reduce a partner’s basis in his partnership interest.
In reaching this result, the Court relied heavily on Walsh v. Div. of Taxation, 10 N.J.Tax 447 (Tax 1989), aff'd per curiam, 240 N.J.Super. 42, 572 A.2d 222 (App.Div.1990). That case involved determination of basis in Subchapter S corporation stock at a time when S corporations, and their pass-through losses, were not recognized in New Jersey. The Tax Court held that, because N.J.S.A. 54A:5-1(c) imposed tax on net gain, the statute intended to tax only economic gain, that is, accession to wealth, and not return of capital. Walsh, supra, at 460. Therefore, non-deductible pass-through losses did not result in a reduction of the taxpayer’s basis in S corporation stock. Ibid. The Supreme Court adopted this interpretation and concluded as follows:
In this case, Koch purchased his partnership interest for $75,000 and sold it for $125,000, resulting in an economic gain of $50,000. Any income tax imposed on an amount greater than Koch’s economic gain of $50,000 constitutes a tax on amounts that represent neither economic gain nor recovery of a past tax benefit. Instead it represents a tax on a return of capital. Such a result was not intended by the Legislature.
[Koch v. Director, Div. of Taxation, supra, 157 N.J. at 9, 722 A.2d 918.]
The Court expressly disregarded the holdings of Vasudev v. Director, Div. of Taxation, 13 N.J.Tax 223 (Tax 1993) and Spinella v. Director, Div. of Taxation, 13 N.J.Tax 305 (Tax 1993). Koch, supra, 157 N.J. at 12-13, 722 A.2d 918. In those cases, the Tax Court held that losses recognized in New Jersey, but which provided no actual tax benefit, nevertheless reduced basis, and distinguished Walsh on the ground that then applicable New Jersey law did not recognize Subchapter S corporations.
The Supreme Court described its holding in Koch as consistent with the method of accounting allowed for federal income tax purposes in that, under the federal methodology, losses not passed through to a partner would not reduce the partner’s basis. Id. at 11, 722 A.2d 918. This treatment of federal tax principles is significant in that the Court focused on how federal tax law would apply if the New Jersey prohibitions against deduction of partner *226 ship losses were part of the federal law. The Court did not focus on the actual federal tax law applicable to partnership losses.
Shortly after the Koch decision, the Director acknowledged that the decision applied to sales of rental real estate.
Although the Supreme Court’s decision in Koch dealt solely with the sale of a partnership interest, the Division of Taxation is not taking such a narrow view. The Division is of the opinion that this decision may also be applied to the sale or liquidation of a sole proprietorship or to the sale of rental property, not held by a business entity, whose income or loss was reported as net gains or income from rents, royalties, patents and copyrights.
[State Tax News, Summer 1999 at 5.]
In a later edition of State Tax News, the Director described his policy and methodology for applying Koch to sales of rental property as intended to keep “a taxpayer’s method of accounting the same for both Federal and State purposes, thus requiring taxpayers to annually use the same depreciation expense allowed or allowable for Federal purposes in determining net income for New Jersey income tax purposes.” State Tax News, Summer 2001 at 3. He explained his approach to “unutilized” depreciation expense as follows:
Since depreciation expense directly impacts basis when calculating the gain on the disposition of ... rental property not held by a business entity, the Division now permits an adjustment to basis for the depreciation expense not utilized for New Jersey tax purposes. The unutilized depreciation expense represents the amount by which the depreciation allowed or allowable exceeds gross receipts in any given tax year. In adopting this approach the Division is in parity with the principle of the Koch decision.
Therefore, a taxpayer that ... owns rental property not held by a business entity is entitled to a Koch type basis adjustment, but only in those instances where gross income before any expenses or deductions (gross receipts) does not exceed the depreciation expense allowed or allowable in the same year.

[Ibid.]

As these statements from State Tax News reflect, the Director determined that, for purposes of calculating basis adjustments, depreciation should be deemed the first deduction from gross income, followed by the deduction of operating expenses. Under this approach, a taxpayer derives a tax benefit from depreciation up to the amount of gross income, but no tax benefit from depreciation in excess of gross income. In an effort to comply .with the Koch mandate that gross income tax may be imposed *227 only on “economic gain [or the] recovery of a past tax benefit,” Koch, supra, 157 N.J. at 9, 722 A.2d 918, the Director permits the excess depreciation to be used to adjust basis upward at the time of sale of a rental property. In the Director’s view, this procedure limits basis reductions resulting from depreciation to amounts representing past tax benefits received by the taxpayer.
Plaintiffs assert that the Director’s approach, although facially consistent with Koch, violates the Koch requirement that gross income tax not be imposed on return of capital, id. at 9, 722 A.2d 918, or “fictitious income.” Id. at 14, 722 A.2d 918. They contend that this requirement can be satisfied only by giving operating expenses, and not depreciation, first priority as deductions because: (1) operating expenses are actual out-of-pocket costs and represent economic reality, as opposed to depreciation which, essentially, is an accounting concept, and (2) giving operating expenses a deduction priority over depreciation is consistent with provisions of the Internal Revenue Code. Under their analysis, they are not seeking to carry forward depreciation by adding it to basis or deducting it from gain in the year of sale, but are treating depreciation, year-by-year, as not deductible, and, therefore, not reducing basis, to the extent that operating expenses offset income. Plaintiffs do not contend that “unutilized” depreciation from one year may be used to offset net income (after operating expenses) earned in another year.
In response, the Director relies on (1) cases stating that, under federal tax law, depreciation reduces basis even if it is not deductible against income in a particular year and provides no tax benefit for that year, and (2) language in N.J.S.A. 54A:5-1(c) referring to federal tax law. Thus, the Director cites Virginian Hotel Corp. v. Helvering, 319 U.S. 523, 63 S.Ct. 1260, 87 L.Ed. 1561 (1943), where the Supreme Court held that, under I.R.C. § 23(a)(1) (the predecessor to I.R.C. §§§ 1011, 1012 and 1016), the cost basis of property must be reduced by allowable depreciation “even though no tax benefit results from the use of depreciation. Wear and tear do not wait on net income.” 319 U.S. at 525, 63 S.Ct. at 1261-62, 87 L.Ed. at 1564. This interpretation of the depreciation deduction was followed under I.R.C. § 1016 in Parks *228 v. United States, 1976 WL 998 (E.D.Wis.1976). The New Jersey Tax Court adopted a similar interpretation of basis adjustments under N.J.S.A. 54A:5-1(c) in Vasudev v. Director, Div. of Taxation, supra, 13 N.J.Tax 223, Spinella v. Director, Div. of Taxation, supra, 13 N.J.Tax 305, and Schiff v. Director, Div. of Taxation, 15 N.J.Tax 370 (Tax 1995).[2]
The Director characterizes plaintiffs’ arguments as an attempt to carry forward their allowable depreciation deductions by using them as an addition to basis or a deduction from gain in the year of sale. He asserts that such a carryforward is in violation of N.J.S.A. 54A:5-2 as interpreted in Guzzardi v. Director, Div. of Taxation, 15 N.J.Tax 395 (Tax 1995), aff'd per curiam, 298 N.J.Super. 568, 690 A.2d 137 (App.Div.1996). There, the Tax Court held that, under N.J.S.A. 54A:5-2, losses occurring in one year may not be carried forward to a later year, even where the Internal Revenue Code would permit such a carryforward. Id. at 400-01. Accord Marrinan v. Director, Div. of Taxation, 17 N.J. Tax 47, 53-55 (Tax 1997).
I conclude that the Director’s arguments represent an effort to interpret or distinguish Koch in a manner that ignores the essence of the decision. Contrary to the mandate of Koch, the Director fails to focus on plaintiffs’ actual economic benefits (accession to wealth and recovery of past tax benefits) and thereby achieves the following inappropriate results:
1. plaintiffs lose all or most of their deduction for out-of-pocket expenses. These expenses are not deductible in the current year to the extent depreciation is sufficient to offset income, and, under Guzzardi, may not be earned forward; and
2. plaintiffs’ bases in their respective properties are reduced, so that, at the time of sale of the properties, fictitious gains, that in reality represent returns of capital, are subject to tax.
*229 The following example demonstrates that the Director’s interpretation of N.J.S.A. 54A:5-1(c) results in the imposition of gross income tax on fictitious income and not on economic benefits. Assume that a taxpayer purchases rental property for $1000, owns it for ten years, and then sells the property for $1000. Assume further that, during each year of ownership, the taxpayer realized $100 of income, incurred $100 of out-of-pocket operating expenses, and, under federal tax law, could deduct $36.36 of depreciation (using the 27.5 year depreciation period for residential real estate set forth in I.R.C. § 168). Under the assumed facts, the taxpayer received no income during the term of his or her ownership and no profit on the sale. If the Director’s analysis were applied, the taxpayer would receive no economic or tax benefit from out-of-pocket expenses equal to depreciation (cumulatively $363.60), and the annual depreciation allowance would result in a purely fictitious taxable gain of $363.60. This result may be appropriate under the Internal Revenue Code, but is contrary to the holding in Koch that no tax may be imposed in the absence of an accession to wealth or recovery of a past tax benefit.
Based on the preceding analysis, I conclude that, for purposes of calculating net gain from the disposition of property: (1) under N.J.S.A. 54A:5-1(c) operating expenses (actual out-of-pocket expenses as opposed to accounting expenses such as depreciation) should be deemed the first deduction from gross income, followed by depreciation, and (2) basis is reduced only to the extent a taxpayer uses depreciation to offset income remaining after deduction of operating expenses. This conclusion not only is consistent with the ruling in Koch, but also is consistent with applicable provisions of the Internal Revenue Code. As discussed above, Koch interpreted the references to federal tax law in N.J.S.A. 54A:5-1(c) as meaning that the statute should be applied by determining how federal tax law would treat a non-deductible partnership loss. Using the same approach here requires an examination of the Internal Revenue Code’s treatment of depreciation from which plaintiffs received no tax benefit, specifically, whether the Code would require the taxpayer to pay tax on gain calculated using basis reduced by the depreciation.
*230 Under I.R.C. § 469, a taxpayer engaged in a passive activity (the Director acknowledges that ownership of the rental properties in issue by the Moroneys and Denitzios constitutes a passive activity) calculates a passive activity loss by deducting passive activity expenses from passive activity gross income (subject to certain exclusions from income and expenses not relevant here). A passive activity loss may not be used to reduce income from non-passive activities, but a taxpayer may suspend a passive activity loss not used in a particular tax year. In the case of rental property, the suspended loss may be used to reduce the gain resulting from a sale of the property. Gain is calculated by subtracting from the sales price the taxpayer’s adjusted basis in the property as reduced by allowable depreciation.
Section 469 allows PALs [(passive activity losses)] to be deducted only to the extent the taxpayer has passive activity gains. Any remaining PAL is suspended, and carried over to the next year, again becoming available to offset passive activity gains. Only upon the disposition of the passive activity does the entire PAL, including the suspended PALs from previous years, become available as a deduction against both passive activity gains and other, ordinary income.
[St. Charles Investment Co. v. Commissioner, 232 F.3d 773, 776 (10th Cir.2000).]
The treatment of passive activity losses under I.RC. § 469 permits a form of loss carry forward not permitted under the GIT Act. The essence of the I.RC. treatment, however, is that a taxpayer incurring a loss from which the taxpayer received no tax benefit in a particular tax year has the opportunity to use the loss to offset gain at the time of sale of a passive activity property.
The same result occurs under my interpretation of N.J.S.A. 54A:5-l(c) as applied to plaintiffs, although in different form. Under that interpretation, operating expenses are the first deduction from operating income, followed by depreciation. To the extent depreciation does not offset income, depreciation produces no tax benefit and does not reduce basis under the GIT Act. This non-reduction of basis is equivalent to allowing a depreciation deduction, from which the taxpayer received no tax benefit, to be suspended and subtracted from gain at the time of sale of a property.
Other provisions of the Internal Revenue Code suggest that assigning depreciation a deduction priority behind that of operat *231 ing expenses is appropriate. Both I.R.C. § 183 (activities not engaged in for profit) and § 280A (business or rental use of homes), neither of which is applicable to plaintiffs’ respective properties, allocate to depreciation a deduction priority after operating expenses. I.R.C. § 183(b) and Treas. Reg. § 1.183-l(b); I.R.C. § 280A(c)(5) and Proposed Treas. Reg. § 1.280A-3(d)(3).
The Director argues that his interpretation of the GIT Act is entitled to deference from the court, and that, under N.J.S.A. 54A:5-l(c), he has express statutory authority to establish the priority of deductions. Dealing with the latter argument first, I note that the authorization given to the Director to establish the priority and assignment of deductions under N.J.S.A. 54A:5-l(c) appears only in the second paragraph of the statute relating specifically to subchapter S corporations. The first paragraph, which governs the taxability of the proceeds from plaintiffs’ sales of their respective properties, contains no such language. As to the Director’s deference argument, Koch states that the Director’s statutory interpretations are not entitled to unquestioned deference because “the courts remain the final authorities on issues of statutory construction and are not obliged to stamp their approval of the administrative interpretation.” Koch v. Director, Div. of Taxation, supra, 157 N.J. at 8, 722 A.2d 918 (internal quotation marks and citations omitted). Here, the Director’s assignment of a first priority to depreciation as a deduction against operating income produces a result which is contrary to the holding in Koch and inconsistent with provisions of the Internal Revenue Code. Under these circumstances, the court need not defer to the Director’s interpretation of N.J.S.A. 54A:5-1(c).[3]
For the reasons set forth above, plaintiffs’ respective motions for summary judgment are granted and the Director’s motions are denied. As a result, the assessment, against Moroney is vacated *232 and set aside, and a refund in the amount of $4785, plus statutory interest, is awarded to Denitzio.

 The Moroneys and the Denitzios hereafter are referred to together as "plaintiffs.”

 As noted above, the Supreme Court in Koch disregarded Vasudev and Spinella. The author of these decisions and Schiff was Judge Crabtree who, in his treatise on state and local property taxation, acknowledges that Koch "effectively overruled” all three decisions. 43 N.J. Practice, State and Local Taxation § 16.3 (David E. Crabtree) (1999).

 Neither the Moroneys nor the Denitzios argued that the Director's interpretation of N.J.S.A. 54A:5-1(c) was invalid because not promulgated as a formal regulation. Without deciding the issue, I note that this argument might have merit under Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 331-32, 478 A.2d 742 (1984).